1  Michael L. Kelly - State Bar No. 82063
   mlk@kirtlandpackard.com
2  Behram V. Parekh - State Bar No. 180361
   bvp@kirtlandpackard.com
3  Joshua A. Fields - State Bar No. 242938
   jf@kirtlandpackard.com
4  KIRTLAND & PACKARD LLP
   2361 Rosecrans Avenue
5  Fourth Floor
   El Segundo, California 90245
6  Telephone: (310) 536-1000
   Facsimile: (310) 536-1001
7
   *Counsel for Plaintiff Raquel Rubio*
8  *and all others similarly situated*

9

10            UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13  RAQUEL RUBIO,  on behalf of herself    )  Case No. CVO7-06766 ABC (CWx)
    and all others similarly situated,        )
14                                             )  **SECOND AMENDED COMPLAINT**
              Plaintiff,                       )
15                                             )  **CLASS ACTION FOR:**
              v.                               )
16                                             )  **I.  VIOLATIONS OF TRUTH IN**
    CAPITAL ONE BANK (USA), N.A.               )      **LENDING ACT, 15 U.S.C. § 1601,**
17  and DOE DEFENDANTS 1-10, et al.            )      ***et seq.*;**
                                               )
18            Defendant.                       )  **II.  VIOLATIONS OF CALIFORNIA**
                                               )       **BUSINESS AND PROFESSIONS**
19  _____ )       **CODE § 17200, *et seq.***

20

21          Plaintiff RAQUEL RUBIO ("MS. RUBIO"), on behalf of herself and all

22  others similarly situated, alleges the following:

23                       **JURISDICTION AND VENUE**

24   1.     This Court has original jurisdiction over this class action pursuant to 28

25  U.S.C. § 1331 because the matter arises from a law of the United States.  *See* 28

26  U.S.C. § 1331.

27  2.     This Court has diversity jurisdiction over this class action pursuant to 28

28  U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because the

LAW OFFICES
KIRTLAND & PACKARD LLP

1   matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a

2   class action in which some members of the class are citizens of different states than

3   the Defendants.  *See* 28 U.S.C. § 1332(d)(2)(A).

4   3.      This Court also has personal jurisdiction over Defendant because Defendant is

5   authorized to do business, and currently does business, in this state.

6   4.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because

7   Defendant has conducted business in this District and is subject to personal

8   jurisdiction and a substantial portion of the conduct complained of herein occurred

9   in this District.

10                              **PARTIES**

11  5.      Plaintiff, MS. RUBIO, at all relevant times herein, was and is a resident of the

12  State of California.  MS. RUBIO became a Capital One credit cardholder on or

13  about February 27, 2004, when she accepted Defendant's credit card offer.

14  6.      Defendant CAPITAL ONE BANK (USA), N.A. (hereafter "CAPITAL ONE"

15  or "Defendant") conducts a substantial amount of business nationwide, including in

16  California.

17                      **PRELIMINARY ALLEGATIONS**

18  7.      This action arises out of CAPITAL ONE's routine practice of sending credit

19  card solicitations to individuals who meet certain criteria based on credit history,

20  wherein CAPITAL ONE, through the solicitations it sends to potential consumers of

21  its credit card services,  promises individuals a fixed Annual Percentage Rate

22  ("APR") on balance transfers and purchases and then subsequently changes the

23  fixed APR that it had previously disclosed, contrary to the terms and conditions

24  contained in the solicitation materials it sent to the potential consumers.

25  8.      In or about February, 2004, MS. RUBIO received a solicitation from CAPITAL

26  ONE to open a CAPITAL ONE Platinum Mastercard.  (See Exhibit "A")

27  9.      In order to initiate her line of credit, the solicitation provided various terms and

28  conditions for MS. RUBIO to review and accept no later than March 24, 2004.

LAW OFFICES
KIRTLAND & PACKARD LLP

10.     While MS. RUBIO has received numerous, similar credit card solicitations, she was particularly attracted to Defendant's solicitation as it advertised a credit card with a low fixed APR.  The solicitation disclosed in numerous places, including the "Schumer Box" (as the table containing interest rate disclosures is commonly known), that the APR on the credit card was "fixed".  (See Exhibit "A" at pages 15-20)

11.     Specifically, the solicitation provided that upon MS. RUBIO's acceptance, she would receive a "low 6.99% fixed APR on balance transfers and purchases." Referring to the fixed APR rate, the solicitation emphasized "this is not an introductory rate," insinuating that the rate would not change after a specified time.  (See Id. at page 16)

12.     The solicitation further provided that the 6.99% fixed rate was subject to increase only upon the occurrence of one of the following stated conditions: "(i) you fail to make a payment to us (CAPITAL ONE) when due; (ii) your account is overlimit; (iii) or your payment is returned for any reason."  (See Id. at pages 19-20)

13.     Pursuant to Merriam-Webster's Online Dictionary, the word "fixed" is defined as "not subject to change or fluctuation" and "stationary."  (www.merriam-webster.com).  MS. RUBIO believed, as any reasonable consumer of credit card services in her position would, that the word "fixed" met this definition and therefore was under the impression that the "fixed" APR of 6.99% on her CAPITAL ONE credit card, as prominently advertised in CAPITAL ONE's solicitation and the "Schumer Box" contained in it, would undeniably remain at that rate throughout the entire time period she chose to utilize her CAPITAL ONE credit card, unless, one of the stated conditions above were to occur.

14.     Based on Defendant's disclosures in its solicitation regarding the fixed APR on the credit card, and related conditions, MS. RUBIO chose to enter into a credit card agreement with CAPITAL ONE on February 24, 2004, well before the expiration date contained in the solicitation.

15.     On March 9, 2004, MS. RUBIO received her card in the mail along with a welcome letter which informed her of her credit limit.

16.     From March, 2004 to August, 2007, nearly three and a half years, MS. RUBIO

KIRTLAND & PACKARD LLP
LAW OFFICES

utilized her CAPITAL ONE credit card and enjoyed the benefits she was originally promised in CAPITAL ONE's solicitation, namely the fixed APR on all balance transfers and purchases that CAPITAL ONE had explicitly disclosed in the solicitation.

17.     During the time she utilized her CAPITAL ONE credit card, MS. RUBIO never submitted a late payment, never exceeded her credit limit, and her payment was never returned to her.  Thus, none of the stated conditions mentioned above ever occurred to justify an APR rate increase.

18.     However, on August 3, 2007, MS. RUBIO  received notification of a change in terms  from CAPITAL ONE warning her that the fixed 6.99% APR on her account was about to significantly increase to 15.9%, almost  9% higher than her originally promised rate.  The rate increase was to be reflected in her September billing statement, and would continue indefinitely.  (See Exhibit "B")

19.     CAPITAL ONE's sole stated reason for the APR increase was provided in the notification of a change in terms as follows: "In light of rising interest rates over the past few years and the rate currently applied to your account balance, the APRs on your account are about to increase." (See Id. at pages 26-27)

20.     Furthermore, the notification also provided that the only way MS. RUBIO could avoid the rate increase was to cancel and close her credit card, and pay off the balance at the original fixed APR.  The deadline to exercise this option was September 11, 2007, just slightly beyond one month from the date of the notification.  (See Id. at pages 26, 28)

21.     Therefore, MS. RUBIO was left with no other option but to either accept the exorbitant rate increase, or be forced by CAPITAL ONE to cancel and/or close her credit card account, even though the original terms and conditions of the solicitation CAPITAL ONE sent her had disclosed that the APR on her credit card would be fixed.

22.     Prior to receipt of the notification of a change in terms, MS. RUBIO had no intention of cancelling and/or closing her CAPITAL ONE credit card.  In fact, she was quite pleased with the benefits, specifically the fixed 6.99% APR that had been

disclosed to her in the solicitation, and intended to continue her usage of the credit card at the disclosed fixed APR of 6.99%.

23.     Furthermore, MS. RUBIO did not want to cancel and/or close her CAPITAL ONE credit card because she understood that routinely opening and closing consumer credit accounts can negatively affect one's overall credit.  MS. RUBIO has excellent credit that she diligently works hard to maintain.

24.     One of the factors that credit rating bureaus use to determine and assess consumers' credit ratings and scores, is the total amount of available credit versus debt and the number and longevity of accounts opened and closed.  This factor is further explained by www.wikipedia.org, an online encyclopedia, which states the following: "the credit rating formula looks at the difference between the amount of credit a person has and the amount being used, so closing one or more accounts will reduce your total available credit. ***And the lower the percentage of available credit, the more the credit score will drop***. The credit formula also factors in the length of time credit accounts have been open, ***so closing an account with several years of history is another avoidable credit mistake***." [emphasis added].

25.     Likewise, an article titled "Your 5-minute guide to credit scores" located on articles.moneycentral.msn.com, also warns consumers about the negative affects of cancelling and/or closing credit cards, by stating the following: "Don't cancel multiple credit cards. That can suddenly lower your available credit and can hurt your credit score. Keep old accounts open to ensure a long credit history."  (See Exhibit "C" at page 31)

26.     At all times mentioned herein,  MS. RUBIO, and all those similarly situated relied on CAPITAL ONE's disclosures in the solicitation it sent to potential consumers of its credit card services regarding the credit card terms and conditions, specifically Defendant's promise to provide a fixed APR on balance transfers and purchases.

27.     At all times mentioned herein, MS. RUBIO, and all those similarly situated, were unaware that CAPITAL ONE's promised fixed APR was in fact temporal in nature, according to CAPITAL ONE, and was subject to change even if the

LAW OFFICES
KIRTLAND & PACKARD LLP

aforementioned conditions were not met and that they may be forced to either accept the interest rate change, or cancel and/or close their credit card account, so as to negatively affect their important credit rating.

28.     Had MS. RUBIO, and all others similarly situated, known the above information, and that the disclosures relating to the APRs on their credit cards contained in the solicitations CAPITAL ONE sent to potential consumers were misleading, they would have never accepted Defendant's offer for a credit card, and therefore would have never entered into contracts with Defendant for credit card services.

29.     Plaintiff is informed and believes that CAPITAL ONE has enjoyed financial gains by its acts of making misleading disclosures relating to APRs in the solicitations it sent to potential consumers of credit cards, which is in violation of federal law, and also violates California law as an act of unfair competition based on the misleading APR disclosures in the solicitations.

30.     Plaintiff, and all those similarly situated, seek to remedy the harm caused by Defendant in wrongfully obtaining financial gains from consumers.  As set forth below, Plaintiff, and all those similarly situated, should be awarded statutory and compensatory damages.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff RAQUEL RUBIO brings this action on behalf of herself and all others similarly situated, as a member of the proposed nationwide plaintiff class and California class (collectively hereafter the "Class") defined as follows:

Nationwide class: All persons who received a solicitation for credit card services from CAPITAL ONE which disclosed a "fixed" APR that CAPITAL ONE subsequently changed, and whose rights were additionally violated by Defendant pursuant to the federal Truth In Lending Act, 15 U.S.C. §1601 *et seq.*

California class: All California residents who received a solicitation for credit card services from CAPITAL ONE which disclosed a "fixed" APR that CAPITAL ONE subsequently changed, and whose rights were additionally violated by Defendant pursuant to California Business and Professions Code §17200 *et seq.*

LAW OFFICES
KIRTLAND & PACKARD LLP

32.     Specifically excluded from the proposed Class is Defendant, any entities in which Defendant has a controlling interest, and the officers, directors, affiliates, legal representatives, successors, subsidiaries and/or assigns of Defendant.

33.     This action is brought and may be properly maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23(a)(1)-(4) and 23(b)(1)-(3).  This action satisfies the numerosity, typicality, adequacy, predominance and superiority requirements of those provisions.

34.     [Fed. R. Civ. P. 23(a)(1)]  The Class is so numerous that the individual joinder of all of its members is impractical.  While the exact number and identities of Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes the Class includes many thousands of members.

35.     [Fed. R. Civ. P. 23(a)(2)] Common questions of fact and law exist as to all members of the Class which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

A.     Whether CAPITAL ONE disclosed in its solicitation to plaintiff and the Class that plaintiff and the Class would receive a fixed APR on their credit card for all balance transfers and purchases;

B.     Whether the solicitation CAPITAL ONE sent to plaintiff and the class was misleading under the federal Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*, in light of CAPITAL ONE's subsequent change in the APR on the credit card for all balance transfers and purchases;

C.     Whether the solicitation CAPITAL ONE sent to plaintiff and the class was misleading under the federal Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* and therefore unlawful under the California Business and Professions Code, in light

-7-

LAW OFFICES
KIRTLAND & PACKARD LLP

of CAPITAL ONE's subsequent change in the APR on the credit card for all balance transfers and purchases;

  D.  Whether the offer CAPITAL ONE sent to plaintiff and the class was unfair and/or deceptive under the California Business and Professions Code, in light of CAPITAL ONE's subsequent change in the APR on the credit card for all balance transfers and purchases;

  E.  Whether Defendant was unjustly enriched; and

  F.  The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class members.

36.  [Fed. R. Civ. P. 23(a)(3)]  Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have sustained injury and are facing irreparable harm arising out of Defendant's common course of conduct as complained of herein.  The losses of each member of the Class were caused directly by Defendant's wrongful conduct as alleged herein.

37.  [Fed. R. Civ. P. 23(a)(4)] Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including complex consumer and mass tort litigation.

38.  [Fed. R. Civ. P. 23(b)(3)] A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable.  Even if every Class member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.  By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management

LAW OFFICES
KIRTLAND & PACKARD LLP

difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

39.     [Fed. R. Civ. P. 23(b)(1)(A)] The prosecution of separate actions by thousands of individual Class members would create the risk of inconsistent or varying adjudications with respect to, among other things, the need for and the nature of proper notice which Defendant must provide to all Class members.

40.     [Fed. R. Civ. P. 23(b)(1)(B)] The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

41.     [Fed. R. Civ. P. 23(b)(2)] Defendant has acted or refused to act in respects generally applicable to the Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Violations of Truth In Lending Act 15 U.S.C. § 1601 *et seq.*)

42.     Plaintiff and the Class incorporate herein the allegations of paragraphs 1 through 41 above.

43.     CAPITAL ONE sent solicitations to plaintiff and the Class offering them a credit card with a disclosed "fixed" interest rate of 6.99%.  The solicitations emphasized that this was not an introductory rate.

44.     Specifically, the solicitations disclosed a fixed APR that was not subject to change unless one of the specified conditions mentioned herein occurred.

45.     None of the specified conditions mentioned in the solicitations occurred.

46.     Despite the disclosures in the solicitation CAPITAL ONE had sent to plaintiff and the class offering a "fixed" APR that was a non-introductory rate, CAPITAL ONE notified Plaintiff and the Class that their fixed APR was going to significantly increase, even though none of the specified conditions mentioned herein occurred.

47.    In order for Plaintiff and the Class to avoid an increased APR, their only option was to cancel and/or close their credit cards, so as to negatively affect their overall credit.

48.    In light of the subsequent change to the APR, CAPITAL ONE's disclosures in the solicitation documents it sent to plaintiff and the class of a "fixed" APR, that was not an introductory rate, were misleading and inadequate under disclosure requirements of the federal Truth In Lending Act, 15 U.S.C. 1601 *et seq.*

49.    Plaintiff, on behalf of herself, and on behalf of the general public, seeks all remedies and relief pursuant to the provisions of the federal Truth In Lending Act, 15 U.S.C. Sections 1601, *et seq.*, including, inter alia, injunctive relief, statutory damages, actual damages, restitution and the disgorgement of money acquired by means of the misleading business practices alleged above.

50.    As a result of Defendant's misleading business practices, Plaintiff and the Class have suffered actual monetary damages, including, but not limited to, increased APR rates and loss of potential credit as a result of cancelling and/or closing their credit cards, in an amount that will be established during the trial. Plaintiff and the Class will also suffer irreparable harm if Defendant's conduct is not enjoined.

51.    As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Violations of California Business and Professions Code §17200, et seq)

52.    Plaintiff and the Class incorporate herein the allegations of paragraphs 1 through 51 above.

53.    California Business and Professions Code Sections 17200, et  seq., of the Unfair Competition Law, defines unfair business competition to include any "unlawful, unfair and fraudulent" business act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.

LAW OFFICES
KIRTLAND & PACKARD LLP

54.    Pursuant to California Business and Professions Code Sections 17200 *et seq.*, and the common law of unfair competition, the business practices of Defendant described above are, and have been, unlawful, unfair and deceptive and have a tendency to mislead the general public.

55.    Specifically, CAPITAL ONE's conduct as it relates to the allegations in this complaint is unlawful for all of the reasons stated in paragraphs 42 through 51 above.

56.    Additionally, CAPITAL ONE's conduct as it relates to the allegations in this complaint is unfair for all of the reasons stated above, and also because incorporating a provision in an agreement with credit card holders that allows a financial services provider such as CAPITAL ONE to retroactively change an APR on a credit card, including on past purchases and balance transfers, despite repeated offers assuring consumers of a "fixed" APR, is an unconscionable practice that harms consumers as it misleads them into choosing one financial service provider over another because they are led to believe that the APR on their credit card is "fixed" and not temporal in nature.

57.    Furthermore, CAPITAL ONE's conduct as it relates to the allegations in this complaint is deceptive for all of the reasons stated above, and also because CAPITAL ONE offered consumers a credit card with a "fixed" APR and then subsequently changed the terms and conditions of the credit card in a manner inconsistent with the advertised "fixed" APR in the offer.  This is a deceptive practice that harms consumers as it misleads them into choosing one financial service provider over another because they are led to believe that the APR on their credit card is "fixed" and not temporal in nature.

58.    Plaintiff, on behalf of herself, and on behalf of the general public, seeks all remedies and relief pursuant to the provisions of California Business and Professions Code Sections 17200, *et seq.*, including, inter alia, injunctive relief, restitution and the disgorgement of money acquired by means of the unlawful and unfair business practices alleged above.

59.     As a result of Defendant's unlawful and unfair business practices, Plaintiff and the Class have suffered actual monetary damages, including, but not limited to, increased APR rates and loss of potential credit as a result of cancelling and/or closing their credit cards, in an amount that will be established during the trial. Plaintiff and the Class will also suffer irreparable harm if Defendant's conduct is not enjoined.

60.     By committing the acts and practices alleged above, Defendant has been, and continues to be, engaged in unlawful and/or unfair business practices within the meaning of the California Business and Professions Code Sections 17200, *et seq.*

61.     The policies, acts and practices employed by Defendant, as described herein, are known, implemented and endorsed by Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other persons similarly situated, prays for judgment against Defendant Capital One as follows:

1.      An Order certifying the Class and any sub-classes thereof that the Court may deem appropriate, and appointing Plaintiff RAQUEL RUBIO, and her counsel, to represent the Class;

2.      For permanent injunctive relief preventing Defendant from engaging in any act or practice violating the federal Truth In Lending Act , 15 U.S.C. Sections 1601 *et seq.,* or constituting unfair competition under California Business & Professions Code Sections 17200 *et seq.* and requiring Defendant to take appropriate acts needed to prevent future deception;

3.      For an order requiring Defendant to restore any money or property that Defendant may have acquired as a result of any act or practice in violation of the federal Truth In Lending Act, 15 U.S.C. Sections 1601 *et seq.* and/or constituting unfair competition under California Business and Professions Code Sections 17200 *et seq.*

4.      For restitution;

5.      An award of statutory damages according to proof;

LAW OFFICES
KIRTLAND & PACKARD LLP

6.    An award of general damages according to proof;

7.    An award of special damages according to proof;

8.    Attorneys' fees;

9.    Costs of suit; and

10.   Any other relief the Court deems proper.


DATED:  April 10, 2008                    Respectfully submitted,

                                          KIRTLAND & PACKARD LLP


                                          By:   /s/ Behram V. Parekh
                                                MICHAEL L. KELLY
                                                BEHRAM V. PAREKH
                                                JOSHUA A. FIELDS

                                                *Counsel for Plaintiff Raquel Rubio, and all others similarly situated.*


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all claims so triable.


DATED:  April 10, 2008                    Respectfully submitted,

                                          KIRTLAND & PACKARD LLP


                                          By:   /s/ Behram V. Parekh
                                                MICHAEL L. KELLY
                                                BEHRAM V. PAREKH
                                                JOSHUA A. FIELDS

                                                *Counsel for Plaintiff Raquel Rubio, and all others similarly situated.*

EXHIBIT A

**-14-**

**FORM 1628 INVITATION**

8427015645192   003   002

Raquel L. Rubio
Apt 211
55 Navy St
Venice, CA 90291-8723

*Please correct name or address if necessary*

**Transfer Opportunity**

YES! I want to transfer the following balance(s) immediately, and agree to receive the Privacy Notice from Capital One® later along with other account information. Maximum total transfer amount will be based on my approved credit line. There is no fee for this service.

Credit Card Issuer

Account Number

Total A/c Amount to Pay   $

◄ *Transfer up to 2 additional balances and save even more*

**This offer expires: March 24, 2004**

9104    Please see the Important Disclosures on the back of the letter for rate, fee and other cost information.

◄ Choose the card that suits your style.
Please place your card choice here from the enclosed provided. If you do not place a sticker on this form, upon approval, you will receive the Platinum design.

11.00 Standard Platinum

Social Security Number

Home Phone

Current Occupation

E Mail Address (optional)

Total Annual Household Income   $

Date of Birth

Current Business Phone

I have read the IMPORTANT DISCLOSURES and Terms of Offer enclosed...

Signature
X _____   Date 2/21-04
Raquel L. Rubio

*Please do not return your sample card with your invitation.*

**MasterCard**

RATE:
**6.99% Fixed APR on Balance Transfers and Purchases**

CREDIT LINE:
Up To $20,000

FEES:
No Annual Fee
No Transfer Fee

STATUS:
Pre-Selected Offer

▲ Please detach here and return in the postage pd. envelope provided. ▲

From: DAVID ST. CLAIR
DIRECTOR OF CONSUMER SERVICES
CAPITAL ONE
P.O. BOX 85546
RICHMOND, VA 23285-5546

#BWNILJJ
#08427015645192#   003   002
RAQUEL L. RUBIO
APT 211
55 NAVY ST
VENICE, CA 90291-8723

*Handwritten notes:*
Capital One
800-733-1471  num
VCM. 9:31 AM on 1/2.04
will use 6-10x/mo.
will make $100-200 payments

iD STATUS CARD
TALONECARD.COM

Special offer for Raquel
Return Invitation by 03/24/04

Priority Notification:

-15-

CAPITAL ONE
P.O. BOX 85546
RICHMOND, VA 23285-5546

*800-733-1471 num*
*ven. 9:31 AM on 1/1.04*
*will use 6-10x/mo.*
*will make $100-200 payments*

TO STATUS CARD

1ALONECARD.COM

#BWNGLJJ
#8427015645192#   003   002
RAQUEL L. RUBIO
APT 211
55 NAVY ST
VENICE, CA 90291-8723

Special offer for Raquel
Return Invitation by 03/24/04

**Priority Notification:**

YOU HAVE BEEN PRE-SELECTED FOR THIS OFFER FOR A CAPITAL ONE* PLATINUM MASTERCARD*
FEATURING A LOW 6.99% FIXED APR ON BALANCE TRANSFERS AND PURCHASES, A CREDIT LINE UP
TO $20,000* AND NO ANNUAL MEMBERSHIP FEE. THIS IS NOT AN INTRODUCTORY RATE! YOU'LL
ALSO ENJOY THE SECURITY OF $0 FRAUD LIABILITY, IF YOUR CARD IS EVER LOST OR STOLEN,
PLUS YOUR CHOICE OF CUSTOM CARD DESIGNS.

TRANSFER YOUR HIGHER-INTEREST CREDIT CARD AND LOAN BALANCES TO YOUR NEW CAPITAL ONE
CARD AND SAVE WITH A 6.99% APR — WITH NO TRANSFER FEES. PROVIDE THE TRANSFER
INFORMATION AND WE'LL TAKE CARE OF THE REST! WE'LL PAY YOUR OTHER BALANCES AND TRANSFER
THEM TO YOUR NEW CAPITAL ONE ACCOUNT. IT'S THAT EASY!

THIS OFFER FOR A 6.99% FIXED APR ON TRANSFERS AND PURCHASES EXPIRES SOON. SIMPLY
COMPLETE AND RETURN THE INVITATION AND TRANSFER REQUEST IN THE POSTAGE-PAID ENVELOPE
PROVIDED, CALL 1-800-CAPITAL, OR VISIT US ONLINE AT WWW.MYCAPITALONECARD.COM TO APPLY.
WHEN YOU APPLY ONLINE, YOU COULD GET A RESPONSE IN AS LITTLE AS 60 SECONDS. APPLY
TODAY!

SINCERELY,
DAVID ST. CLAIR
DIRECTOR OF CONSUMER SERVICES

| Apply online and get a response in as little as 60 seconds | |
| --- | --- |
| Reservation Number:<br>8427015645192 | Access Code:<br>035766 |

8427-1,2

**-16-**

# 6.99%

**FIXED APR ON BALANCE TRANSFERS AND PURCHASES**

**NO ANNUAL FEE**

**NO TRANSFER FEE**

Simply complete this form to start saving with this low, fixed rate of 6.99%. We'll take care of the rest. You may request a transfer of some or all of a given balance from another creditor. Minimum transfer amount is $50.

## Transfer Request Form
### Additional opportunities to transfer higher-rate balances ▼

**Don't forget, there is no fee for transferring balances!**
In addition to credit card balances you can also transfer balances from higher-rate loans — student loans, auto loans, etc.

Creditor Name/Loan                          Creditor Name

Account Number                              Account Number

Specific Amount to Pay  $                   Specific Amount to Pay  $

*Capital*One®
P.O. Box 85090
Richmond, VA 23286-9291

**Begin transferring balances using the first transfer form located on the front of the invitation.** Help us process your transfer requests faster by following these guidelines:
(1) You may request to transfer some or all of a given balance from another creditor. Minimum transfer amount is $50.
(2) List the most important transfer first.
(3) For Card/Loan Issuer, list the financial institution (not MasterCard® Visa® or yourself).
(4) Continue to make your payments on these accounts until the payment for the transferred amount appears on your other issuer's statement.
(5) Transfers between Capital One accounts are not permitted.

9033

If return envelope is missing, please mail your completed Platinum Invitation to: Processing Department • P.O. Box 85090 • Richmond, VA 23285-5090

---

## Questions & Answers on Transferring Balances

**Q: Why would I want to transfer my balances?**
A: You can save on purchases you've already made. Transfer your balances to your Capital One Platinum MasterCard account and take advantage of the low interest rate to consolidate your balances into one monthly payment.

**Q: How do transfers work?**
A: Simply complete the Balance Transfer Request portion of your Invitation and mail it in, call 1-800-CAPITAL or visit us online at www.mycapitalonecard.com. Upon approval, Capital One will write checks to your other creditors in the amounts you indicate (based on your approved credit line). Capital One will then place charges on your new Platinum MasterCard account representing those transactions.

**Q: Is there a fee for this service?**
A: No. This transfer service is absolutely free!

**Q: What interest rate will I be charged?**
A: You will be charged a 6.99% fixed APR on all transferred balances made through this offer. This is not an introductory rate!

**Q: Do I need to continue making payments to my other creditors?**
A: We will need 3–4 weeks to process your request. Therefore, you will still need to make payments on your other accounts to keep them current until your request is complete.

-17-

# Questions & Answers on Transferring Balances

**Q: Why would I want to transfer my balances?**
A: You can save on purchases you've already made. Transfer your balances to your Capital One Platinum MasterCard account and take advantage of the low interest rate to consolidate your balances into one monthly payment.

**Q: How do transfers work?**
A: Simply complete the Balance Transfer Request portion of your Invitation and mail it in, call 1-800-CAPITAL or visit us online at www.mycapitalonecard.com. Upon approval, Capital One will write checks to your other creditors in the amounts you indicate (based on your approved credit line). Capital One will then place charges on your new Platinum MasterCard account representing those transactions.

**Q: What kind of balances can I transfer?**
A: You can use this service for personal loans, auto loans, home equity loans and other similar accounts, in addition to credit cards, including MasterCard,® Visa,® American Express,® Discover® and retail cards.

**Q: If Capital One pays off the entire balance, will my other accounts be closed?**
A: We will not close your accounts. If you want to close your accounts, you must contact the other creditors directly.

**Q: Is there a fee for this service?**
A: No. This transfer service is absolutely free!

**Q: What interest rate will I be charged?**
A: You will be charged a 6.99% fixed APR on all transferred balances made through this offer. This is not an introductory rate!

**Q: Do I need to continue making payments to my other creditors?**
A: We will need 3–4 weeks to process your request. Therefore, you will still need to make payments on your other accounts to keep them current until your request is complete.

Watch Your Savings Continue
With Our Low Rate!



Transfer Balances Today!

Returned check fee: $29.

- All your Annual Percentage Rates (APRs) are subject to increase if any of the following conditions ("Conditions") occur: (i) you fail to make a payment to us when due; (ii) your account is overlimit; (iii) or your payment is returned for any reason. All APRs will change with the beginning of the billing period after the period in which the condition occurred. The first time any of the Conditions occur, your purchase and special transfer APRs (as applicable) may be increased to a rate of 12.9% **ANNUAL PERCENTAGE RATE** (0.03534% daily periodic rate). If any of the Conditions occur twice within any 6-month period, all of your APRs may be increased to a rate of 25.9% **ANNUAL PERCENTAGE RATE** (0.07096% daily periodic rate).

- You are being offered a Capital One Platinum MasterCard account. The lines of credit offered with the Platinum MasterCard account range from $500 to $20,000.

- Alimony, child support or separate maintenance income need not be revealed if you do not choose to have it considered as a basis for repaying this loan.

Your minimum payment will be 3% of your outstanding balance or $10, whichever is greater. If your balance is less than $10, your minimum payment will equal your balance amount.

The minimum gross annual income required for an account is $10,000.

## TERMS OF OFFER

I hereby apply to Capital One Bank (Capital One) for a credit card account. Everything that I have stated in this Invitation is correct to the best of my knowledge.

- Arbitration: I understand that the Customer Agreement contains an Arbitration Provision that may limit my legal rights, including my right to go to court, to have a jury trial and to participate in class actions.
- I understand that I must be 18 years or older as well as a U.S. citizen or permanent resident alien to qualify for this offer. This Invitation is nontransferable and is void to residents of the dependent areas of the U.S.
- I understand that this offer is based on an initial assessment that I met Capital One's credit standards, and that I may be ineligible if I have responded to a previous offer for a credit card issued by Capital One within the last 45 days or if I have been approved for a previous Capital One offer. I understand my credit line will be determined after Capital One approves my Invitation.
- I understand that you will retain my Invitation whether or not it is approved.
- Capital One maintains the right not to open my account if: 1) the information provided as part of my application is incomplete, inaccurate or unverifiable, or I no longer meet Capital One's standards for creditworthiness; 2) my name and/or mailing address has been altered; or 3) Capital One receives my Invitation after it has expired. For verification, Capital One may contact me to confirm application information within 21 days of the receipt of my application. Capital One's decision to contact me may be based on my creditworthiness.
- I authorize you to bill my approved Capital One credit card account for the amount(s) listed for balance transfers. I understand that I am applying for a transfer amount up to the total amount listed on my Balance Transfer Request. I understand that you will advise me if you are unable to process my payment request for any reason. In addition, Capital One will not be responsible for any charges billed to me for the account(s) requested for balance transfers and Capital One will process only those Balance Transfer Requests that can be transferred under my assigned credit line.
- The terms of this offer may not be applied to existing Capital One accounts.

- I authorize Capital One to check my credit and employment history and to answer questions about its credit experience with me.
- I will receive the Capital One Customer Agreement and am bound by its terms and future revisions thereof. My Agreement terms (for example, rates and fees) are subject to change.
- Payments will first be applied to finance charges and fees, next, to the fixed payment amount on your Special Transfer or Special Purchase segment (if applicable), then, to each segment of your account in order of lowest to highest APRs. Lastly, any remaining payment will be allocated to promotional balances (if applicable).
- An applicant, if married, may apply for a separate account.

**California Residents:** Applicants: 1) may, after credit approval, use the credit card account up to its credit line; 2) may be liable for amounts extended under the plan to any joint applicant. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**Married Wisconsin Residents:** No provision of any marital property agreement, unilateral statement, or court order applying to marital property will adversely affect a creditor's interests unless prior to the time credit is granted, the creditor is furnished with a copy of the agreement, statement or court order, or has actual knowledge of the provision.

**New York and Vermont Residents:** Capital One may obtain at any time your credit reports, for any legitimate purpose associated with the account or the application or request for an account, including but not limited to reviewing, modifying, renewing and collecting on your account. On your request, you will be informed if such a report was ordered. If so, you will be given the name and address of the consumer reporting agency furnishing the report. New York residents may contact the New York State Banking Department (1-800-518-8866) for a comparative list of credit card rates, fees and grace periods.

**Ohio Residents:** Ohio anti-discrimination laws require creditors to make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on individuals upon request. The Ohio Civil Rights Commission administers these laws.

(continued)

**-19-**

## CAPITAL ONE® IMPORTANT DISCLOSURES

| | |
|---|---|
| **ANNUAL PERCENTAGE RATE (APR) for purchases\*** | A fixed rate of **6.99%** (0.01915% daily periodic rate). |
| Other **APRs** | Balance transfer APR: Same as for purchases. Cash advance APR: A fixed rate of 19.8% (0.05425% daily periodic rate). Default APR: You may be repriced to a fixed rate of 12.9% (0.03534% daily periodic rate), or a fixed rate of 25.9% (0.07096% daily periodic rate). See explanation below. |
| Grace period for repayment of the balance for purchases | You will have a minimum of 25 days without a finance charge on new purchases if the total New Balance is paid in full each month by the following statement closing date. |
| Method of computing the balance for purchases | Average daily balance (including new purchases). |
| Membership Fee | None. |
| Minimum Finance Charge | For each billing period that your account is subject to finance charge, a minimum total **FINANCE CHARGE** of $0.50 will be imposed. |
| Miscellaneous Fees | Cash advance fee: 3% of amount of the cash advance, but not less than $5. Late payment fee: $29 if your balance at the time the late payment fee is assessed is less than $1,000. If your balance at that time is greater than or equal to $1,000, fees for late payments will be $35. Over-the-credit-limit fee: $29. Balance transfer fee: None. |

Returned check fee: $29.

\* All your Annual Percentage Rates (APRs) are subject to increase if any of the following conditions ("Conditions") occur: (i) you fail to make a payment to us when due; (ii) your account is overlimit; (iii) or your payment is returned for any reason. All APRs will change with the beginning of the billing period after the period in which the condition occurred. The first time any of the Conditions occur, your purchase and special transfer APRs (as applicable) may be increased to a rate of 12.9% **ANNUAL PERCENTAGE RATE** (0.03534% daily periodic rate). If any of the Conditions occur twice within any 6-month period, all of your APRs may be increased to a rate of 25.9% **ANNUAL PERCENTAGE RATE** (0.07096% daily periodic rate).

\* You are being offered a Capital One Platinum MasterCard account. The lines of credit offered with the Platinum MasterCard account range from $500 to $20,000.

† Alimony, child support or separate maintenance income need not be revealed if you do not choose to have it considered as a basis for repaying this loan.

Your minimum payment will be 3% of your outstanding balance or $10, whichever is greater. If your balance is less than $10, your minimum payment will equal your balance amount.

The minimum gross annual income required for an account is $10,000.

### TERMS OF OFFER

I hereby apply to Capital One Bank (Capital One) for a credit card account. Everything that I have stated in this Invitation is correct to the best of my knowledge.

• Arbitration: I understand that the Customer Agreement contains an Arbitration Provision that may limit my legal rights, including my right to go to court, to have a jury trial and to participate in class actions.

• I understand that I must be 18 years or older as well as a U.S. citizen or permanent resident alien to qualify for this offer. This Invitation is nontransferable and is void to residents of the dependent areas of the U.S.

• I understand that this offer is based on an initial assessment that I met Capital One's credit standards, and that I may be ineligible if I have responded to a previous offer for a credit card issued by Capital One within the last 45 days or if I have been approved for a previous Capital One offer. I understand my credit line will be determined after Capital One approves my Invitation.

• I understand that you will retain my Invitation whether or not it

• I authorize Capital One to check my credit and employment history and to answer questions about its credit experience with me.

• I will receive the Capital One Customer Agreement and am bound by its terms and future revisions thereof. My Agreement terms (for example, rates and fees) are subject to change.

• Payments will first be applied to finance charges and fees next, to the fixed payment amount on your Special Transfer or Special Purchase segment (if applicable), then, to each segment of your account in order of lowest to highest APRs. Lastly, any remaining payment will be allocated to promotional balances (if applicable).

• An applicant, if married, may apply for a separate account. **California Residents:** Applicants: 1) may, after credit approval, use the credit card account up to its credit line; 2) may be liable for amounts extended under the plan to any joint applicant. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. **Married Wisconsin Residents:** No provision of any marital

**-20-**

**Fair Credit Reporting Act Notice**

You were selected for this offer based upon the information in your credit report which satisfied Capital One Bank's criteria for creditworthiness. Grant of this offer, after you respond to it, is conditioned upon your satisfying any applicable criteria bearing on your creditworthiness, including your income, employment, and any other information provided on your application. You have the right to prohibit information contained in your credit report from being used in connection with any credit or insurance transaction that is not initiated by you. You may exercise this right by contacting the credit reporting agencies' notification systems at: Experian Target Marketing, P.O. Box 919, 701 Experian Parkway B2, Allen, TX 75013, 1-888-567-8688; Equifax Options, P.O. Box 740123, Atlanta, GA 30374-0123, 1-888-567-8688; Trans Union Corporation, Attn: Marketing Opt Out, P.O. Box 97328, Jackson, MS 39288-7328, 1-888-567-8688.

Capital One is a federally registered service mark. All rights reserved. Capital One supports information privacy protection; see our website at www.capitalone.com.

## YOUR BILLING RIGHTS.
### Keep This Notice for Future Use.

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

1.  Your name and account number.
2.  The dollar amount of the suspected error.
3.  Describe the error and explain, if you can, why you believe there is an error.
    If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special rule for credit card purchases.** If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

    (a) You must have made the purchase in your home state or, if not within your
        home state, within 100 miles of your current mailing address; and
    (b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

### Important Information About Your Credit Card Account

**Finance Charge.**

1. Transactions which are not subject to a grace period are assessed finance charges 1) from the date of the transaction or 2) from the date the transaction is processed to your account or 3) from the first calendar day of the current billing period. Additionally, if you did not pay the "New Balance" from the previous billing period in full, finance charges continue to accrue to your unpaid balance until the unpaid balance is paid in full. This means that you may still owe finance charges, even if you pay the entire New Balance indicated on the front of your statement by the next statement closing date, but did not do so for the previous month. Unpaid finance charges are added to the applicable segment of your Account. Cash advances (the cash advance segment) and special transfers (if your account includes a special transfer segment) may not avoid finance charges.

2. **Cash Advance, Purchase/Other Charges and Special Transfer or Special Purchase Segments (If Your Account Includes a Special Transfer or Special Purchase Segment).** Finance charge is calculated by multiplying the daily balance of each segment of your account (e.g., cash advance, purchase, special transfer, and special purchase) by the corresponding daily periodic rate(s) that has been previously disclosed to you. At the end of each day during the billing period, we apply the daily periodic rate for each segment of your account to the daily balance of each segment. Then at the

**-21-**

the bill was correct.

After we receive your letter, we cannot try to collect any amount you question or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special rule for credit card purchases.** If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

    (a) You must have made the purchase in your home state or, if not within your
        home state, within 100 miles of your current mailing address; and
    (b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

## Important Information About Your Credit Card Account

### Finance Charge.

1. Transactions which are not subject to a grace period are assessed finance charges 1) from the date of the transaction or 2) from the date the transaction is processed to your account or 3) from the first calendar day of the current billing period. Additionally, if you did not pay the "New Balance" from the previous billing period in full, finance charges continue to accrue to your unpaid balance until the unpaid balance is paid in full. This means that you may still owe finance charges, even if you pay the entire New Balance indicated on the front of your statement by the next statement closing date, but did not do so for the previous month. Unpaid finance charges are added to the applicable segment of your Account. Cash advances (the cash advance segment) and special transfers (if your account includes a special transfer segment) may not avoid finance charges.

2. **Cash Advance, Purchase/Other Charges and Special Transfer or Special Purchase Segments (If Your Account Includes a Special Transfer or Special Purchase Segment).** Finance charge is calculated by multiplying the daily balance of each segment of your account (e.g., cash advance, purchase, special transfer, and special purchase) by the corresponding daily periodic rate(s) that has been previously disclosed to you. At the end of each day during the billing period, we apply the daily periodic rate for each segment of your account to the daily balance of each segment. Then at the end of the billing period, we add up the results of these daily calculations to arrive at your periodic finance charge for each segment. We add up the results from each segment to arrive at the total periodic finance charge for your account. To get the daily balance for each segment of your account, we take the beginning balance for each segment and add any new transactions and any periodic finance charge calculated on the previous day's balance for that segment. We then subtract any payments or credits posted as of that day that are allocated to that segment. This gives us the separate daily balance for each segment of your account. However, if you paid the New Balance shown on your previous statement in full (or if your new balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances.

   To calculate your total finance charge, multiply your average daily balance by the daily periodic rate and by the number of days in the billing period. Due to rounding on a daily basis, there may be a slight variance between this calculation and the amount of finance charge

3. **Determining Daily Periodic Rates.** Divide the corresponding Annual Percentage Rates by 365 and round to the nearest 1/100,000th of 1%, not to exceed the maximum allowed by applicable law. If the daily periodic rates and corresponding Annual Percentage Rates increase, the Finance Charge will increase and your minimum payment may be greater. Refer to the IMPORTANT DISCLOSURES for daily periodic rates and Annual Percentage Rates.

### Other charges.

    **Copying Charge:** $3.00 for a copy of a Periodic Statement and $2.00 for a copy of a transaction (fee imposed per copy).

### Important Information About Procedures For Applying For Or Opening A New Account:

    To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means for you: When you apply for or open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you.

-23-

EXHIBIT B



**Capital**One®
P.O. Box 85650
Richmond, VA  23285-5650

PRE-SORTED
FIRST-CLASS MAIL
U.S. POSTAGE PAID
CAPITAL ONE

*rec'd 8/3·07*

**IMPORTANT INFORMATION REGARDING YOUR ACCOUNT**

AUTO
0972445209558    5540    011
Raquel L Rubio
55 Navy St Apt 211
Venice, CA  90291-8723

23

The following important information is regarding your account ending in

**9424**



### what's changing...

At Capital One', we are committed to providing valuable customers like you with honest and open communications. Today, we're notifying you that features and terms of your Capital One account are about to change. The following changes will take effect starting with your billing period that ends after 9/16/07. This means these changes will take effect starting as soon as your September 2007 billing period but no later than your October 2007 billing period:*

- APR on Purchases
- Cash Advance APR
- Late Payment Fee
- Over-the-credit-limit Fee
- Returned Payment Fee

Please read the rest of this brochure for more specific information about these changes.

**These changes amend your Customer Agreement. All other account terms and conditions remain the same.**



**see page 4** for information on how to decline these changes to your account.

Please retain for your records.        Page 1

---

### Annual Percentage Rates (APRs)
In light of rising interest rates over the past few years and the rate currently applied to your account balance, the APRs on your account are about to increase.*

### Purchase Annual Percentage Rate (APR)
Your new rate for purchase balances will be as follows:
- A variable rate that equals the Prime rate plus 7.65%, currently 15.9% **ANNUAL PERCENTAGE RATE** (0.04356% daily periodic rate).*

### Cash Advance Annual Percentage Rate (APR)
Your new rate for cash advance balances will be as follows:
- A variable rate that equals the Prime rate plus 14.74%, currently 22.99% **ANNUAL PERCENTAGE RATE** (0.06299% daily periodic rate).*

### Fees
Please note the following changes to your fees:

**Late Payment Fee**
Your late payment fee will be based on the amount of your account balance at the time the fee is applied:

Balance of $0 - $99.99 = $15 fee

Balance of $100 - $249.99 = $29 fee

Balances of $250 or more = $39 fee

**Over-the-credit-limit Fee** = $39

**Returned Payment Fee** = $39

*Thank you for choosing Capital One.
We value you as a customer and look forward
to serving you for many years to come.*

Page 2

---

### Important Information

* This communication is also a n... under the Equal Credit Opport... are required by law to provide

### Equal Credit Opportunity Act

The federal Equal Credit Opport... creditors from discriminating ag...
- on the basis of race, color, reli... marital status, age (provided t... capacity to enter into a bindin...
- because all or part of the appl... from any public assistance pro
- because the applicant has in g... right under the Consumer Cre...

The creditor taking this action is
        Capital One Ban...
        P.O. Box 30285
        Salt Lake City, U...
Please only send questions or co... change – we cannot process you... process your request to decline ... to this address. To decline these ... the instructions on page 4 of th...

The federal agency that adminis... law concerning this creditor is:
        The Federal Rese...
        701 East Byrd St...
        Richmond, Virgi...

-26-

### Annual Percentage Rates (APRs)

In light of rising interest rates over the past few years and the rate currently applied to your account balance, the APRs on your account are about to increase.*

### Purchase Annual Percentage Rate (APR)

Your new rate for purchase balances will be as follows:
- A variable rate that equals the Prime rate plus 7.65%, currently 15.9% **ANNUAL PERCENTAGE RATE** (0.04356% daily periodic rate).†

### Cash Advance Annual Percentage Rate (APR)

Your new rate for cash advance balances will be as follows:
- A variable rate that equals the Prime rate plus 14.74%, currently 22.99% **ANNUAL PERCENTAGE RATE** (0.06299% daily periodic rate).†

### Fees

Please note the following changes to your fees:

**Late Payment Fee**
Your late payment fee will be based on the amount of your account balance at the time the fee is applied:

Balance of $0 - $99.99 = $15 fee

Balance of $100 - $249.99 = $29 fee

Balances of $250 or more = $39 fee

**Over-the-credit-limit Fee** = $39

**Returned Payment Fee** = $39

*Thank you for choosing Capital One.
We value you as a customer and look forward
to serving you for many years to come.*

Page 2

---

### Important Information

- This communication is also a notice of action taken under the Equal Credit Opportunity Act. As such, we are required by law to provide the following statement:

**Equal Credit Opportunity Act**

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants:
- on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract);
- because all or part of the applicant's income is derived from any public assistance program; or
- because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

The creditor taking this action is:
Capital One Bank
P.O. Box 30285
Salt Lake City, UT 84130-0285

Please only send questions or concerns related to this change – we cannot process your payment, nor can we process your request to decline these changes if mailed to this address. To decline these changes, please follow the instructions on page 4 of this brochure.

The federal agency that administers compliance with the law concerning this creditor is:
The Federal Reserve Bank of Richmond
701 East Byrd Street
Richmond, Virginia 23219

Page 3

*rec'd 8/3/07*

## if you decide not to accept these terms

You can choose to decline these changes and cancel your account.

To decline these changes, call our automated system at 1-800-211-3315 by midnight EDT, September 11, 2007. Please have your account information readily available.

If you decline, starting September 16, 2007, you will:
• Not be able to use your card
• Have to cancel any scheduled payments you have set up for automatic billing

If you decline, you will be able to pay down your account at your existing terms. We will close your account after the balance you owe is $0 and we confirm that no new charges have posted to your account.

## Important Information

* Your billing period is defined as the first billing cycle with a periodic statement closing date on or after the first of the month. For example, your September 2007 billing cycle is the first billing cycle with a periodic statement closing date on or after September 1, 2007.

† How Your Variable Rates are Calculated: Your purchase and cash advance APRs may vary quarterly. The Prime rate used to determine your purchase and cash advance APRs is the rate published in the "Money Rates" section of The Wall Street Journal on the 25th day of December, March, June, and September, or if not published on that date, then as published in the immediately preceding publication date and will take effect on the first day of your January, April, July and October billing periods. Rate in effect 7/01/2007.

**CapitalOne**

© 2007 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved.

Page 4          09724-5540          Page 5          FM102067



**EXHIBIT C**                                                    **-29-**



**The Basics**

## Your 5-minute guide to credit scores

A better score means a better deal from landlords, lenders, insurers and other creditors. Use these dozen-plus tips to boost yours.

By MSN Money staff

Your credit score is likely the most important three-digit number in your life.

Your score affects how much you pay for credit, and it can affect other bills you pay, where you live and where you work.

Banks and credit card companies review your score when deciding whether to extend you credit and how much interest to charge. (See "What bad credit really costs you.")

A high score can lead to lower car- and home-insurance premiums, a deposit waiver from utility companies and a better service package from the cell-phone company. (See "5 people who check your credit.")

Many landlords check credit scores before allowing you to sign a lease. (See "Credit checks: A civil rights issue?")

Many employers -- 35% in 2003 -- are doing credit checks on prospective employees, particularly those who would deal with money. Employers need your written permission to make the check and must give you a chance to respond.

With so much at stake, it's wise to find out where you stand and take steps to raise your score if it's below 700, particularly before you apply for a mortgage or other loan. Above 760 and you're in the upper echelon. A score below 620 tells people you're not a good risk and destines you for credit denial or subprime interest rates.

**What is a credit score?**

The three major credit-reporting agencies -- Equifax, Experian and TransUnion -- use software developed by Fair Isaac Corp. to rate your risk for assuming debt based on your credit history. The

**-30-**

result is commonly known as a FICO score.

The score is based on five factors, including payment history, the amounts you owe and the types of credit you've obtained. Personal information like income, occupation, age and marital status are not considered.

The FICO score can range from 300 to 850, although very few reach that pinnacle. Each credit bureau may assign you a different score, based on the information it receives from creditors.

You generally have to pay to get your credit score. You are legally entitled to one free credit report each year from each of the three credit reporting agencies. (See "How to get a free credit report.")

To watch for errors and identity theft, stagger your requests and get a report from a different bureau every four months.

Go to AnnualCreditreport.com to order a free report. Make sure you access the right Web site. Impostor Web sites abound.

Want to improve your score and keep it high? Think of credit as a privilege to be used sparingly.

Don't apply for lots of credit cards. A credit inquiry can deduct five points from your credit score. However, multiple checks made when you're shopping for a mortgage will count as only one.

Asking for your personal report won't hurt your score. Neither will requests made by credit card companies that offer preapproved cards, or requests by prospective employers.

Avoid applying for credit cards from companies that don't set a spending limit or won't report your limit to the credit bureaus. (See "Weird stuff that hurts your credit.")

Don't cancel multiple credit cards. That can suddenly lower your available credit and can hurt your credit score. Keep old accounts open to ensure a long credit history.

Limit the percentage of available credit you use to no more than 30%, even if you pay off your balance each month. Your credit report will show the amount you owed, even if you subsequently paid in full, and excessive spending will ding your score.

If you don't have a credit history, start one by obtaining a secured credit card and managing it responsibly. (See "9 ways to build a killer credit score.")

**It pays to pay on time**
The No. 1 way to raise your credit score? Pay all of your obligations on time. Your payment history constitutes 35% of your credit score.

That includes library fines and parking tickets. Municipalities are more aggressive about turning over delinquent accounts to collection agencies, which will drag down your score. (See "Now bounced checks can trash your credit.")

One late payment reported to a credit bureau can drop your score by 100 points, particularly if you had a high score.

Late payments can remain on your credit report for seven years. Bankruptcies appear for 10 years.

Consulting a credit counseling service to manage excessive debt will not damage your credit score.

If you find an error in your credit report, ask the creditor to correct it, then notify the credit bureau by sending a certified letter and copies of documents that support your claim.

If the error isn't fixed, the bureau must identify the person who investigated your claim, and you can request a second report.

If the error is corrected, the bureau must send you a copy of your new report and, at your request, a copy to everyone who obtained your credit report within the previous six months.

If it's not corrected, you can include a statement in your credit report.

Faced with a faulty credit report when you're about to obtain a mortgage? Mortgage companies can engage a rapid rescoring service to correct errors within days.

Paying a service to monitor your credit is not worth the fee, unless you've been the victim of identity theft and have reason to believe you're still at risk.

*If you've got a hint we haven't included or find a factual error, let us know by sending an e-mail to Five.minute@hotmail.com.*

**Published May 11, 2007**

**Rate this Article**
Click on the stars below to rate this article from 1 to 5

**Low**                 **High**
View all top-rated articles
E-mail us your comments on this article

Your 5-minute guide to credit scores - M...

**Discuss in a message board**