1   Kirtland & Packard LLP
    Michael L. Kelly - State Bar No. 82063
2   mlk@kirtlandpackard.com
    Behram V. Parekh - State Bar No. 180361
3   bvp@kirtlandpackard.com
    Joshua A. Fields - State Bar No. 242938
4   jf@kirtlandpackard.com
    2361 Rosecrans Avenue, Fourth Floor
5   El Segundo, California  90245
    Telephone: (310) 536-1000
6   Facsimile: (310) 536-1001

7   *Counsel for Plaintiff Raquel Rubio,*
    *and all others similarly situated*

8

9

10              UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13  RAQUEL RUBIO,  on behalf of herself      )   Case No. CVO7-06766 ABC (CWx)
    and all others similarly situated.       )
14                                           )   CLASS ACTION
                Plaintiff,                   )
15                                           )   OPPOSITION TO DEFENDANT'S
                v.                           )   MOTION TO DISMISS PLAINTIFF'S
16                                           )   SECOND AMENDED COMPLAINT
    CAPITAL ONE BANK (USA), N.A.             )   AND TO STRIKE CERTAIN
17  and DOE DEFENDANTS 1-10, et al.          )   REMEDIES SOUGHT
                                             )
18              Defendant.                   )
                                             )
19  ──────────────────────────────────────  )

20

21

22

23

24

25

26

27

28

02164-00001  0125526.01

*(vertical left margin)* LAW OFFICES  KIRTLAND & PACKARD LLP

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. FEDERAL TRUTH IN LENDING ACT . . . . . . . . . . . . . . . . . . . . . . . . 3

    1. TILA BACKGROUND AND STATUTORY PURPOSE . . . . . . . . . 3

    2. REGULATION Z AND OFFICIAL STAFF COMMENTARY . . . . . 5

    3. "CLEAR AND CONSPICUOUS" DISCLOSURES REQUIRED
       BY TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV. CAPITAL ONE'S SOLICITATION VIOLATED TILA'S
    DISCLOSURE REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    1. THE "SCHUMER BOX" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    2. THE THIRD CIRCUIT'S DECISION IN *ROBERTS V. FLEET
       BANK (R.I.)* IS DIRECTLY ON POINT AND SHOULD BE
       FOLLOWED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    3. CAPITAL ONE'S ARGUMENT THAT IT ADEQUATELY
       DISCLOSED SPECIFIC EVENTS THAT MAY LEAD TO AN
       INTEREST RATE INCREASE ON PLAINTIFF'S CREDIT
       CARD IS FALSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    4. THE COURT'S CONSTRUCTION OF THE
       CONTRACT ON DEFENDANT'S MOTION TO DISMISS
       PLAINTIFF'S BREACH OF CONTRACT CLAIM IS
       IRRELEVANT HERE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    5. CAPITAL ONE'S REPEATED ARGUMENT THAT THE
       CUSTOMER AGREEMENT EXPRESSLY RESERVES THE
       RIGHT TO CHANGE CREDIT TERMS IGNORES THAT THE
       SOLICITATION'S "SCHUMER BOX" EXPRESSLY STATED
       THAT THE APR WAS "FIXED" AND WAS, THEREFORE,
       MISLEADING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V. PLAINTIFF HAS STATED A CLAIM FOR VIOLATION OF THE
    UCL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    1. PLAINTIFF HAS STANDING TO STATE A UCL CLAIM . . . . . . 16

    2. THERE IS NO "SAFE HARBOR" FOR CAPITAL ONE'S
       ACTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    3. PLAINTIFF HAS ALLEGED UNLAWFUL CONDUCT IN ITS
       TILA CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

LAW OFFICES

**KIRTLAND & PACKARD LLP**

4.  PLAINTIFF HAS ALLEGED FRAUDULENT AND UNFAIR CONDUCT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

5.  PLAINTIFF'S REMEDIES ARE NOT PREEMPTED BY FEDERAL LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

LAW OFFICES

KIRTLAND & PACKARD LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Bantolina v. Aloha Motors, Inc.*,
419 F. Supp. 1116 (D.C. Hawaii 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Barnes v. Fleet Nat. Bank, N.A.*,
370 F.3d 164 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cuevas v. Atlas Realty/Financial Services, Inc.*, 2008 U.S. DIST. LEXIS 9614
(N.D.Cal., January 30, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Daghlian v. DeVry University, Inc.*,
461 F. Supp. 2d 1121 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*FTC v. Algoma Lumber Co.*,
291 U.S. 67 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 21

*In re Ferrell*,
358 B.R. 777 (9th Cir. BAP, Nev. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jackson v. Grant*,
890 F.2d 118 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 11

*Marksman Partners, L.P. v. Chantal Pharm. Corp.*,
927 F. Supp. 1297 (C.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West
Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Phleger v. Countrywide Home Loans, Inc.*,
2007 U.S. Dist. LEXIS 86413 (N.D.Cal., November 16, 2007) . . . . . . . . . . . . . . 4

*Roberts v. Fleet Bank (R.I.)*,
342 F.3d 260 (3d. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Rossman v. Fleet Bank (R.I.) Nat'l Ass'n*,
280 F.3d 384 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 15

*Semar v. Platte Valley Fed. Sav. & Loan Ass'n*,
791 F.2d 699 (9th Cir. 1986.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Smith v. No. 2 Galesburg Fin. Corp.*,
615 F.2d 407 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United States v. City of Redwood City*,
640 F.2d 963 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*,
178 F. Supp. 2d 1099 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 20

## **STATE CASES**

LAW OFFICES
KIRTLAND & PACKARD LLP

*Cel-Tech Commun's., Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hall v. Time Inc.*,
158 Cal. App. 4th 847 (Cal.Ct.App. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Klein v. Earth Elements, Inc.*,
59 Cal. App. 4th 965 (Cal.Ct.App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Olsen v. Breeze, Inc.*,
48 Cal. App. 4th 608 (Cal.Ct.App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

## FEDERAL STATUTES / REGULATIONS

12 C.F.R. 226.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18, 20

12 C.F.R. 226.5a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 13, 18, 19

Truth in Lending Act, Official Staff Commentary,
12 C.F.R. pt. 226.5, Supp. I, § 226.5(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 13

15 U.S.C. 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18, 19, 20

15 U.S.C. 1637 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

Federal Rule Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Cal. Bus. & Prof. Code § 17204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

LAW OFFICES
**KIRTLAND & PACKARD LLP**

## I.  <u>INTRODUCTION</u>

Plaintiff Raquel Rubio ("Plaintiff") has filed a Second Amended Complaint ("SAC") in this action alleging violations of the federal Truth In Lending Act ("TILA") and California Business and Professions Code 17200 ("B&PC 17200" or "UCL").  Plaintiff's claims are based on defendant Capital One Bank (USA), N.A.'s ("Capital One" or "Defendant") unlawful practice of failing to make "clear and conspicuous" annual percentage rate ("interest rate" or "APR") disclosures in solicitation materials it sent to Plaintiff and the class, as required by law. Specifically, Capital One disclosed a "fixed" APR in its solicitation for credit card services to Plaintiff and the class, and then subsequently changed the interest rate on the credit cards it issued to them, rendering the disclosure of a "fixed" APR entirely misleading and unlawful.  In reality, the interest rate Capital One actually provided to Plaintiff and the class, despite its disclosures otherwise, was not "fixed" at all. This practice constitutes a violation of TILA, the federal law governing open-end consumer credit transactions such as those at issue in this case, and is also an unlawful and misleading practice in violation of B&PC 17200.

In its Motion to Dismiss ("Motion"), defendant Capital One misconstrues the allegations in Plaintiff's SAC, relying on arguments that do not pertain to the allegations in the SAC filed in this matter, and which should be ignored by this Court as a result.  Additionally, Defendant misinterprets case law from another circuit court, which, under remarkably similar facts as are at issue in this case, found that *the exact* business practice engaged in by Capital One in this case–advertising a "fixed" APR that was not actually "fixed" at all–could constitute a violation of TILA's disclosure requirements.  Defendant's Motion to Dismiss Plaintiff's TILA claim should be denied for this reason.

Next, Defendant argues that Plaintiff does not have standing to bring her BP&C 17200 claim, because, according to Capital One, it did not cause Plaintiff's injury, but rather, she caused the injury herself.  This argument is a significant

KIRTLAND & PACKARD LLP

LAW OFFICES

1   stretch, considering that Capital One's unlawful and misleading business practice, as

2   discussed above, was directly responsible for Plaintiff's injury in this case.

3   Furthermore, based on its inaccurate arguments regarding Plaintiff's TILA claim,

4   Defendant erroneously asserts that Plaintiff has failed to state a claim under BP&C

5   17200.  However, Defendant's argument relies in part on a previous order from this

6   Court concerning a breach of contract claim that is no longer at issue in this case, is

7   not relevant to the issues in this Motion, and should have no implications in the

8   Court's analysis of it.  Alternatively, Defendant argues that certain remedies sought

9   by Plaintiff and the class in the state law claim are preempted by the National Bank

10  Act.  However, Defendant's argument is misplaced and premature at this stage in the

11  litigation, as this assertion is really an affirmative defense to certain claims for relief

12  in Plaintiff's prayer that Defendant will need to establish at a later time.  There are

13  numerous questions of fact to be resolved relating to Defendant's preemption

14  argument.  A request to strike at this stage in the proceedings is not the proper forum

15  to deal with these issues, and Defendant's Motion to Dismiss Plaintiff's Second

16  Amended Complaint and To Strike Certain Remedies Sought should be denied.  In

17  sum, Defendant's Motion should be denied in its entirety.

## II.   LEGAL STANDARD

19          In analyzing a motion to dismiss, "the court must accept plaintiff's factual

20  allegations as true, and construe them and draw all reasonable inferences from them

21  in favor of the nonmoving party."  *Daghlian v. DeVry University, Inc.*, 461 F. Supp.

22  2d 1121, 1125 (C.D. Cal. 2006); s*ee also No. 84 Employer-Teamster Joint Council*

23  *Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 931 (9th Cir.

24  2003).  The proper analysis on a motion to dismiss is not whether a plaintiff's

25  ultimate success on the merits is likely, but rather, whether the plaintiff is entitled to

26  proceed further in attempting to establish the facts alleged.  *See Marksman Partners,*

27  *L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1304 (C.D. Cal. 1996).  Dismissal

28  under Rule 12(b)(6) "is proper only where there is either 'a lack of a cognizable

LAW OFFICES

KIRTLAND & PACKARD LLP

legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Daghlian*, *supra* 461 F. Supp. 2d 1121 at 1125.  Due to this standard, motions to dismiss for failure to state a claim are disfavored, and dismissals are proper only in "extraordinary" cases.  *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).  In addition, "[l]eave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment." *Cuevas v. Atlas Realty/Financial Services, Inc.*, 2008 U.S. DIST. LEXIS 9614 at *5 (N.D.Cal., January 30, 2008).

## III.   FEDERAL TRUTH IN LENDING ACT

### 1.   TILA BACKGROUND AND STATUTORY PURPOSE

TILA was enacted in 1968 as Title I (Consumer Credit Cost Disclosure) of the federal Consumer Credit Protection Act, Pub.L. 90-321, 82 Stat. 146 (1968), and has been amended several times.  TILA's statutory purpose, specifically stated in its introduction, is as follows:

> **to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.**

15 U.S.C. 1601(a) (2000).  (Emphasis added.)  *See also Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989), where the United States District Court for the Northern District of California described TILA's purpose, succinctly stating that "TILA was enacted by Congress to 'avoid the uninformed use of credit.'"  Thus, according to both the statute and the courts, TILA's explicit purpose is to require credit card issuers to provide information relating to credit cards to consumers in a clear manner, to allow those consumers to evaluate the market for credit services and

LAW OFFICES

KIRTLAND & PACKARD LLP

1   make *informed* decisions based on that information.  *See id.*[1]

2        Put another way, because "consumers were being inundated with credit card

3   solicitations that failed to disclose basic cost information about the cards being

4   promoted," Congress enacted TILA to ensure that consumers of credit services can

5   engage in significant comparison shopping by comparing credit terms more readily

6   and knowledgeably than they otherwise would be able to do.  *Roberts v. Fleet Bank*

7   *(R.I.)*, 342 F.3d 260, 265 (3d. Cir. 2003).  TILA also works to establish <u>uniformity</u>

8   in disclosures relating to credit terms, which further enhances the ability of

9   consumers to make informed decisions about the credit products they are accepting

10  and agreeing to use.[2]  Furthermore, as stated by the United States District Court for

11  the Northern District of California in regards to TILA's stated goal of avoiding the

12  uninformed use of credit:

13        To effectuate this purpose, "[e]ven technical or minor violations of the

14        TILA impose liability on the creditor."  *Id.* (citing *Semar v. Platte*

15        *Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir. 1986.)).

16        Thus, the Ninth Circuit has held that the TILA and accompanying

17        regulations must be absolutely complied with and strictly enforced."

18        *Id.*

19  *Phleger v. Countrywide Home Loans, Inc.*, 2007 U.S. Dist. LEXIS 86413 at *12

20  (N.D.Cal., November 16, 2007).  *See also Jackson v. Grant*, 890 F.2d 118, 120 (9th

21  Cir. 1989).  In addition, TILA was enacted to serve as a consumer protection statute,

22  as "[c]ongress designed the law to apply to all consumers, who are inherently at a

23  disadvantage in loan and credit transactions."  *Semar v. Platte Valley Fed. Sav. &*

24

25        [1] That "false or misleading advertising has an anti-competitive effect has long

26  been established."  *FTC v. Algoma Lumber Co.*, 291 U.S. 67, 79-80 (1934).

27        [2] "Congress decided that demanding early disclosure of relevant cost

28  information from credit card companies would enable consumers to shop for the
    best card."  *Roberts*, 342 F.3d at 265.

LAW OFFICES
KIRTLAND & PACKARD LLP

02164-00001  0125526.01                    4

1   *Loan Ass'n*, 791 F.2d 699, 704- 705 (9th Cir. 1986.)[3]

2       **2.      REGULATION Z AND OFFICIAL STAFF COMMENTARY**

3       Under the authority of TILA, the Federal Reserve Board ("Board")

4   promulgated Regulation Z & Supp. I (Official Staff Interpretations).  Both TILA and

5   Regulation Z are liberally construed in favor of the consumer in the Ninth Circuit,

6   and, as stated above, "[t]o insure that the consumer is protected ... [the TILA and

7   accompanying regulations] must be absolutely complied with and strictly enforced,"

8   as a result.  *Jackson v. Grant* 890 F.2d at 120, *quoting Semar*, 791 F.2d at 705.

9

10      **3.      "CLEAR AND CONSPICUOUS" DISCLOSURES REQUIRED**

11               **BY TILA**

12      Under TILA, credit lenders are required to make certain "clear and

13  conspicuous" disclosures when extending credit (certain terms must be displayed

14  more conspicuously than others.)  *In re Ferrell*, 358 B.R. 777 (9th Cir. BAP, Nev.

15  2006).  *See* 15 U.S.C. 1637; 12 C.F.R. 226.5.  The "clear and conspicuous"

16  requirement comes from Regulation Z, which specifically states, in the section that

17  governs general disclosure requirements, that the "creditor shall make the

18  disclosures required by this subpart clearly and conspicuously in writing ..."  12

19  C.F.R. 226.5(a)(1).

20      The disclosures that are required for solicitations for credit card services, such

21  as the one that Capital One sent Plaintiff in this case, are specifically articulated in

22  both TILA, at 15 U.S.C. 1637(c)[4] and in Regulation Z at 12 C.F.R. 226.5a.  That

23  _____

24      [3] Importantly, for this reason, among others, class actions are an encouraged
     means of pursing TILA lawsuits.  *See Bantolina v. Aloha Motors, Inc.*, 419 F. Supp.
25  1116 (D.C. Hawaii 1976).

26      [4] 15 U.S.C. 1637(c) is one <u>specific</u> provision in TILA which mandates
     disclosure requirements for solicitations for open-ended credit arrangements under
27  TILA, such as are at issue here.  Regulation Z elaborates on these requirements at 12
     C.F.R. 226.5a.  The Official Staff Commentary provides additional details
28  concerning these laws.  Truth In Lending Act, Official Staff Commentary, 12 C.F.R.

LAW OFFICES
KIRTLAND & PACKARD LLP

section of Regulation Z requires disclosure of the annual percentage rate that will govern the credit transactions for the credit card that will be issued if the solicitation is successful in attracting the consumer's business. *See* 12 C.F.R. 226.5a(b)(1). Importantly, this section of Regulation Z also mandates *the manner and form* in which disclosures made under its guidelines are made to the consumer. Along these lines, Regulation Z states that the APR disclosure:

> shall be provided in a prominent location on or with an application or a solicitation, or other applicable document, and in the form of a table with headings, content, and format substantially similar to any of the applicable tables found in Appendix G.

12 C.F.R. 226.5a(a)(2)(i). (Excerpts of Appendix G, including the Applications and Solicitations Model Form and Sample, are attached to this Opposition as Exhibit "A".) The table described in this section of Regulation Z, which must contain the APR disclosures in any solicitation sent to a potential credit card consumer, is commonly referred to as a "Schumer Box". Thus, a credit card issuer who sends a solicitation to a potential consumer of credit services must disclose the APR for the credit card it is offering in a "Schumer Box" and in a "clear and conspicuous" manner. (See *id.*)

Furthermore, the Official Staff Commentary for Regulation Z, as articulated by the Board, elaborates on the "clear and conspicuous" standard for disclosures in solicitations for credit card services, stating that the "clear and conspicuous standard requires that disclosures be in a ***reasonably understandable form.***" Truth In Lending, Official Staff Commentary, 12 C.F.R. pt. 226.5, Supp. I, § 226.5(a)(1). (Emphasis added.) So, under TILA, not only must an APR disclosure be made in a "Schumer Box" and in a "clear and conspicuous" manner, but it also must be

pt. 226 Supp. I. Thus, defendant's argument that there are no specific provisions that Capital One has violated here is categorically false.

LAW OFFICES
KIRTLAND & PACKARD LLP

"reasonably understandable" to a potential credit card consumer.[5]  Contrary to Defendant's argument in its Motion to Dismiss that Plaintiff "has not and cannot identify any specific disclosure requirement in TILA or Regulation Z violated by the solicitation she received that encouraged her to apply for her credit card account," Defendant has violated each of the laws and regulations described above.  (Motion to Dismiss at p. 1, lines 18-21.)

## IV.   CAPITAL ONE'S SOLICITATION VIOLATED TILA'S DISCLOSURE REQUIREMENTS

### 1.    THE "SCHUMER BOX"

Capital One sent Plaintiff a solicitation for credit card services in or about February 2004.  (SAC at ¶ 8, Ex. "A".)  The solicitation contained a "Schumer Box", which disclosed, among other things, the APR on the credit card it was offering to Plaintiff.  (SAC at Ex. "A", page 20.)  The section of the "Schumer Box" containing the required APR disclosure reads as follows:

| ANNUAL PERCENTAGE RATE (APR) for purchases* | A fixed rate of **6.99%** (0.01915% daily periodic rate). |
| --- | --- |

(Id.)  One word that sticks out in this portion of the "Schumer Box" is "fixed," which according to Merriam-Webster's Online Dictionary is defined as "not subject to change or fluctuation" and "stationary".  *Irrespective* of what Capital one may have said *elsewhere* in the solicitation, or in subsequent materials sent to Plaintiff, such as the Customer Agreement, the "Schumer Box," where Capital One is required to disclose the APR in a "clear and conspicuous" manner, and in a "reasonably understandable" form, expressly said the APR was "fixed," in no uncertain terms, which was entirely ***in***consistent with statements made elsewhere in

---

[5] This has important implications for Defendant's Motion to Dismiss, as statements made ***outside*** the "Schumer Box" should not play a role in the analysis of whether there was a TILA violation for disclosures ***required inside*** the "Schumer Box".

LAW OFFICES

KIRTLAND & PACKARD LLP

the solicitation.  A reasonable consumer of credit card services in Plaintiff's position would undoubtedly understand, from the language in the "Schumer Box" (by design the most prominent section of the solicitation for disclosures), that the APR on her credit card was "fixed" and would not be subject to change.

This practice of Capital One, including the word "fixed" in the "Schumer Box" to describe the APR on the credit card it was advertising in its solicitation (which actually did not have a "fixed" APR based on the subsequent change in APR by Capital One and was also inconsistent with other statements contained in the solicitation), was a violation of TILA and Regulation Z's "clear and conspicuous" requirement, as it was neither a "clear and conspicuous" disclosure of the credit terms it was offering to Plaintiff nor was it in "reasonably understandable form," since it was inaccurate and did not reflect the true nature of the credit card services that Capital One advertised in other parts of the solicitation and would subsequently provide to Plaintiff.  Due to this inconsistent language in the solicitation materials ("fixed" APR versus allegedly reserving the right to change the APR), a reasonable consumer could find the materials confusing and misleading.  This was a violation of TILA, and, under ***nearly identical*** circumstances, another circuit court has found that a remarkably similar practice could constitute a TILA violation.

## 2.   THE THIRD CIRCUIT'S DECISION IN *ROBERTS V. FLEET BANK (R.I.)* IS DIRECTLY ON POINT AND SHOULD BE FOLLOWED

The Third Circuit decision in *Roberts v. Fleet Bank (R.I.)*, 342 F.3d 260, 268 (3d. Cir. 2003) contains remarkably similar facts as are at issue in this case, is wholly on point and persuasive, and, contrary to Defendant's arguments, should be followed by this court.  In the *Roberts* case, the Third Circuit analyzed a case in which a credit card holder, on behalf of herself and a class of similarly situated persons, brought class action claims against a credit card issuer, Fleet Bank, for violations of TILA, among others, including breach of contract.  Plaintiff Roberts'

KIRTLAND & PACKARD LLP
LAW OFFICES

claims in that case were based on a misleading business practice of Fleet Bank, which was nearly identical in nature to the business practice that Capital One has engaged in here. Specifically, in the *Roberts* case, Fleet Bank sent a solicitation to plaintiff Roberts advertising a "fixed 7.99 APR" that was "NOT an introductory offer." *See Roberts v. Fleet Bank (R.I.)*, 342 F.3d at 268. Just like Capital One has done to Ms. Rubio in this case, subsequent to plaintiff Roberts opening a credit card account with Fleet Bank based on the solicitation and its advertisement of a "fixed" APR, Fleet Bank sent her a letter stating that it was increasing the "fixed" APR to 10.5% (a notably *smaller* increase than the one Capital One forced upon Ms. Rubio here.)

Based on Fleet Bank's business practice of advertising a "fixed" APR (that was "not an introductory rate") in solicitation materials, and then subsequently increasing the APR on the credit card, Plaintiff Roberts asserted causes of action for violations of TILA, Breach of Contract, and Unjust Enrichment against Fleet Bank. The Third Circuit analyzed Plaintiff Roberts' TILA claims, and held that there was a triable issue of fact as to whether the solicitation materials Fleet Bank sent to plaintiff Roberts were misleading and therefore violations of TILA's disclosure requirements. Specifically, the Third Circuit in *Roberts* stated that:

> Because the purpose of the TILA is to assure meaningful disclosures, "the issuer must not only disclose the required terms, it must do so accurately." *Rossman v. Fleet Bank (R.I.) Nat'l Ass'n*, 280 F.3d 384, 390-91 (3d Cir. 2002). "The accuracy demanded excludes not only literal falsities, but also misleading statements." *Id.* (citing *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 443 (3d Cir. 1977)).

*Roberts*, 342 F.3d at 266. Thus, the *Roberts* court found that it was a question of fact whether it was misleading and a violation of TILA to advertise a "fixed" APR in the solicitation materials it sent to Plaintiff in that case, when in fact, the APR was actually subject to change. The whole purpose of the TILA disclosure

LAW OFFICES
KIRTLAND & PACKARD LLP

9

requirement in solicitation materials and the "Schumer Box" is to provide for "reasonably understandable," "clear and conspicuous" disclosures of credit terms so that there will be meaningful decisionmaking on the part of credit card consumers *at the time they are choosing which credit card issuer to borrow from.* Undoubtedly, the word "fixed" could cause a reasonable consumer to be confused about the temporal quality of the offer. *See Roberts*, 342 F.3d at 268.

It should also be noted that plaintiff in *Roberts* established that there was a triable issue of fact as to her cause of action for a TILA disclosure violation, as discussed above, despite the fact that she lost her Breach of Contract claim on summary judgment. *See Roberts*, 342 F.3d at 270. Importantly, the two claims in that case were not intertwined, because the TILA violation, based on the misleading business practice relating to disclosures in the solicitation materials, was not affected by the Cardholder Agreement in that case (referred to as a Customer Agreement here). In addition, the Court in *Roberts* specifically stated that "[a provision in the Cardholder Agreement] fails to cure any of the TILA defects in the initial mailing." *Id.* at 268. In other words, the Breach of Contract action is in essence a wholly different inquiry from whether there is a TILA violation relating to misleading APR disclosures. As a result, Defendant's reliance on this Court's previous Order on Plaintiff's Breach of Contract claim in this action is misplaced and should not play a role in the Court's analysis here.

Although the Ninth Circuit has not ruled on a case with facts entirely similar in nature to the *Roberts* case, or the case presently before this Court, there are a number of similarities in the approach and construction of the Third and Ninth Circuits in their analysis of TILA claims, which lend additional credence to the *Roberts* Court's analysis as it applies to this case. Firstly, both the Third and Ninth Circuit have a liberal construction of TILA claims, which are more favorable to the credit card holder and are geared toward protecting the consumer. According to the Third Circuit, "[a]s 'the TILA is a remedial consumer protection statute, we have

LAW OFFICES
KIRTLAND & PACKARD LLP

1   held "it should be construed liberally in favor of the consumer."'" *Roberts*, 342 F.3d

2   at 266.  The Ninth Circuit agrees.  *See Jackson*, 890 F.2d at 120, *quoting Semar*, 791

3   F.2d at 704.

4          Additionally, *other* circuit courts have taken a similar approach to the *Roberts*

5   court in analyzing TILA and other consumer protection statutes, demonstrating that

6   the *Roberts* holding was not an isolated decision by a rogue court construing TILA

7   in a unique manner, as Defendant seems to imply in its Motion to Dismiss.  As the

8   First Circuit stated in articulating the broad scope  provided by a consumer

9   protection statute such as TILA:

10          even without an explicit statutory provision, courts have interpreted

11          TILA to prohibit misleading statements, holding that 'a misleading

12          disclosure is as much a violation of TILA as a failure to disclose at all.'

13   *Barnes v. Fleet Nat. Bank, N.A.*, 370 F.3d 164, 174 (1st Cir. 2004), *quoting Smith v.*

14   *Chapman*, 614 F.2d 968, 977 (5th Cir. 1980).  The First Circuit went on to describe

15   numerous other circuit courts that have a similar approach to TILA violations.

16          Specifically, the First Circuit in *Barnes v. Fleet* pointed to both the Third

17   Circuit and the Fifth Circuit as also finding that *misleading* statements made in

18   disclosures are violations under TILA, much like any other.  *See Barnes*, 370 F.3d at

19   174, *citing Roberts v. Fleet Bank*, 342 F.3d 260 (as discussed in detail above where

20   the court held it was a question of fact whether misleading statements were a

21   violation of TILA); *Rossman v. Fleet Bank Nat'l Ass'n*, 280 F.3d 384, 394 (3d Cir.

22   2002) (where the Third Circuit held that the statement "no annual fee" is misleading

23   and a violation of TILA if the contract terms allow for the imposition of an annual

24   fee within one year); *Smith v. No. 2 Galesburg Fin. Corp.*, 615 F.2d 407, 420 (7th

25   Cir. 1980) (where the Fifth Circuit found a TILA violation where a provision

26   provided by a creditor disclosing a security interest in after-acquired property was so

27   poorly drafted that it was misleading).  In light of the numerous circuit courts that

28   have construed TILA in this manner in analyzing similar business practices as

LAW OFFICES
KIRTLAND & PACKARD LLP

1  Capital One has engaged in here, Capital One's argument that the *Roberts* decision

2  is wrong "because it is founded on a mistaken analysis of Regulation Z" rings

3  hollow.  (Motion to Dismiss at p.9, lines 16-17.)

4       Much like Fleet Bank in the *Roberts* case, Capital One's misleading business

5  practice here violates TILA, and is contrary to the purpose that TILA serves in

6  creating a competitive marketplace for credit products.  The "Schumer Box" is

7  essentially a list of the costs of a credit card, and when it contains misleading

8  information–such as the word "fixed" to describe what is really an APR that is

9  subject to change at will–a potential consumer is being led to believe they are

10  receiving one credit product when in reality they are getting something totally

11  different.  Furthermore, allowing one credit issuer to circumvent the mandate of

12  TILA and destroy the uniformity in disclosure of credit pricing that TILA was

13  designed to establish entirely defeats the purpose of the statute.  For these reasons,

14  the persuasive reasoning of the *Roberts* decision should be followed in this case.

15  **3.**    **CAPITAL ONE'S ARGUMENT THAT IT ADEQUATELY**

16        **DISCLOSED SPECIFIC EVENTS THAT MAY LEAD TO AN**

17        **INTEREST RATE INCREASE ON PLAINTIFF'S CREDIT**

18        **CARD IS FALSE**

19       Capital One argues in its Motion to Dismiss that it adequately disclosed the

20  specific events which could lead to an interest rate increase on Plaintiff's credit card,

21  as required by TILA and Regulation Z.  (See Motion to Dismiss at p.8, lines 9-20.)

22  Specifically, Defendant states that "Plaintiff's solicitation includes an asterisk in the

23  first row after the word "purchases" to direct Plaintiff to a paragraph of text

24  immediately below the Schumer Box that enumerates three specific events that

25  could cause her interest rate to change."  (Id. at p.8, lines 14-17.)  However, Capital

26  One's argument ignores the fact that it did not include in those three events that it

27  could change the interest rate on Plaintiff's credit card due to "rising interest rates,"

28  which is the reason (or "event") that Capital One provided in the Notice of Change

LAW OFFICES
KIRTLAND & PACKARD LLP

in Terms that it subsequently sent to Plaintiff.  (SAC at ¶ 18, Ex. "B", pp. 26 or 27.)  In other words, Capital One actually **did not** disclose all of the "specific events" that could lead to an interest rate change, as it purports to have done in its Motion to Dismiss.  Further, Capital One certainly did not disclose that it could change the interest rate at will.

The fact that Capital One included the term "fixed" in the "Schumer Box" regarding the APR on the credit card it was offering to Plaintiff in the solicitation makes its failure to disclose that it could change the APR on her credit card due to interest rate increases, or any other reason it so chose, even more egregious.  As Capital One specifically states, TILA and Regulation Z require that if interest rate increases will occur upon the occurrence of a specific event, then that event must be disclosed in the solicitation.  (See Motion to Dismiss at p.8, lines 9-13, citing Truth In Lending, Official Staff Commentary, 12 C.F.R. pt. 226.5, Supp. I, §226.5a(b)(1), cmt. 7, at p. 395.)  But as discussed above, the reason ultimately given for Capital One's interest rate increase was that interest rates had been rising, which would mean that Capital One actually should have disclosed in the "Schumer Box" that the rate could vary, which Capital One did not do.  Capital One's actions in advertising a "fixed" APR in the "Schumer Box," while at the same time failing to specify "rising interest rates" as a specific event that could lead to an interest rate increase in the future, violates both the letter and the spirit of TILA as it was not a "clear and conspicuous" disclosure in "reasonably understandable" form, as TILA and Regulation Z require.  *See* 15 U.S.C. 1637; 12 C.F.R. 226.5a.  Defendant's Motion to Dismiss should be denied.

**4.     THE COURT'S CONSTRUCTION OF THE CONTRACT ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S BREACH OF CONTRACT CLAIM IS IRRELEVANT HERE**

Plaintiff's TILA claim is based on Defendant's failure to make "clear and conspicuous" disclosures that were "reasonably understandable" to a potential

LAW OFFICES
KIRTLAND & PACKARD LLP

consumer of credit services in the <u>solicitation</u> it sent to Plaintiff and the class.
Despite this, Capital One spends a significant amount of time in its Motion to
Dismiss focusing on Plaintiff's Breach of Contract claim.  However, contrary to
Defendant's repeated arguments in its Motion to Dismiss, the court's construction of
the solicitation and (subsequently mailed) Customer Agreement in its analysis of
Plaintiff's Breach of Contract claim, which is no longer at issue in this case, is
completely irrelevant to Plaintiff's TILA claim.  This is because the TILA claim ***is
based on a failure to make adequate disclosures as required by law in the
solicitation materials (and specifically the "Schumer Box") Defendant sent to
Plaintiff at the point in time that Plaintiff received the solicitation.***

Under TILA, the solicitation materials and "Schumer Box" stand by
themselves in determining compliance with the disclosure requirements of the
statute, and are not affected by subsequently mailed materials that were not part of
the solicitation.  As the Third Circuit stated in *Roberts v. Fleet Bank (R.I.)*, a
provision in the Customer Agreement that was subsequently mailed to the plaintiff
in that case,

> fails to cure any of the TILA defects in the initial mailing.  To begin
> with, Fleet only mails the Cardholder Agreement after a consumer has
> accepted the invitation ... Indeed, Fleet's practice of mailing the
> Cardholder Agreement containing important rate change information,
> after the consumer accepts the card, is contrary to the TILA mandate
> that credit card solicitations disclose all required information.  *See* S.
> Rep. No. 100-259, at 1 (1988) *reprinted in* 1988 U.S.C.C.A.N. 3936,
> 3937.

*Roberts*, 342 F.3d at 268.  Just as the Defendant did in *Roberts* without success,
Capital One argues throughout its Motion to Dismiss that the Customer Agreement
somehow saves its practice from being a TILA violation.  (See Motion to Dismiss at
p.3, line 25.)  But Capital One fails to address the real issue under TILA, which is

LAW OFFICES
**KIRTLAND & PACKARD LLP**

whether the APR was adequately *disclosed* in a "clear and conspicuous" manner in the "Schumer Box." (See Id.) It was not and Capital One violated TILA as a result.

Capital One's argument ignores the fact that TILA and Regulation Z require the mandated APR disclosures to be in the "Schumer Box," which was not at all at issue in the Breach of Contract claim, which involved an analysis of the entirety of the "contract" and was not limited to the solicitation materials. Further, as noted by the court in *Rossman v. Nat'l Ass'n*, while materials may be literally true, thus resulting in no actual breach of contract, they still may be sufficiently misleading to result in a violation of TILA. *See Rossman*, 280 F.3d at 394. The analysis here, on *this* Motion to Dismiss, is whether the "Schumer Box" contained a misleading disclosure; the breach of contract analysis that the Court performed is not relevant to this TILA claim.

5.    **CAPITAL ONE'S REPEATED ARGUMENT THAT THE CUSTOMER AGREEMENT EXPRESSLY RESERVES THE RIGHT TO CHANGE CREDIT TERMS IGNORES THAT THE SOLICITATION'S "SCHUMER BOX" EXPRESSLY STATED THAT THE APR WAS "FIXED" AND WAS, THEREFORE, MISLEADING**

Capital One spends a significant amount of time in its Motion to Dismiss pointing to and relying on the Court's previous ruling on its Motion to Dismiss Plaintiff's Breach of Contract Claim (which is no longer at issue in this case), and stating that the Court held that Capital One expressly reserved the right to change the terms on Plaintiff's credit card in the Customer Agreement it sent to her. (See e.g. Motion to Dismiss at p. 3, lines 8-10, where Capital One states that this Court found that "'[t]he Customer Agreement contains [a] provision by which Defendant expressly reserved the right to change the interest rate on Plaintiff's account at any time.'")

The obvious question then, in response to Defendant's repeated assertion on

1 this issue, is *why did the "Schumer Box," which the Board has expressly required*

2 *for APR disclosures in solicitations, state that the APR was "fixed"?* This "fixed"

3 language was completely inconsistent with the language in the rest of the solicitation

4 materials and was a misleading business practice and a violation of TILA.

5 Defendant's argument is misplaced because Defendant is simply arguing that the

6 *interest rate increase* was not unlawful, but this misconstrues Plaintiff's TILA

7 claim, which is that the *disclosures* in the solicitation were unlawful. The Motion to

8 Dismiss Plaintiff's TILA claim should be denied.

9 **V.   PLAINTIFF HAS STATED A CLAIM FOR VIOLATION OF THE UCL**

10 California's Unfair Competition Law, BP&C 17200, permits a plaintiff to

11 recover for any unlawful, unfair, or fraudulent business act or practice, and unfair,

12 deceptive, untrue or misleading advertising practice. *See* Cal. Bus. & Prof. Code §

13 17200. The purpose of BP&C 17200 is "to protect both consumers and competitors

14 from unlawful, unfair or fraudulent business practices by promoting fair competition

15 in commercial markets for goods and services." *Hall v. Time Inc.*, 158 Cal. App. 4th

16 847, 852 (Cal.Ct.App. 2008). "Whether a business act or practice constitutes unfair

17 competition within *BP&C § 17200* is a question of fact." *Watson Labs., Inc. v.*

18 *Rhone-Poulenc Rorer, Inc.* 178 F. Supp. 2d 1099, 1117 (C.D. Cal. 2001).

19 **1.   PLAINTIFF HAS STANDING TO STATE A UCL CLAIM**

20 In its Motion to Dismiss, Capital One argues that Plaintiff does not have

21 standing to bring a UCL claim because, according to Defendant, any loss of money

22 or property was caused not by Capital One but by Plaintiff's choice not to opt out of

23 the interest rate increase. (See Motion to Dismiss at p. 11, line 26 to p. 12, line 2; p.

24 12, line 9 to p. 13, line 12.) This is nothing more than "victim-blaming" of the

25 highest order by Capital One (alleging Ms. Rubio *must* have done *something* to

26 deserve her fate), as Plaintiff was actually forced *by* Capital One into a no-win

27 situation, in which she faced the dilemma of having to choose between the lesser of

28 two evils, either of which would cause her injury or harm: (1) accept a significantly

LAW OFFICES
KIRTLAND & PACKARD LLP

higher interest rate than the "fixed" APR Capital One had advertised to her in its solicitation for the credit card, or (2) experience a damaged credit rating.  No credit card consumer should be forced into this unenviable position, and Capital One is unsuccessfully attempting to put the onus on Plaintiff for creating her injury, when in actuality it was solely Capital One's actions which are responsible for the injury.

In this instance, Capital One's "alleged unfair competition ... caused the plaintiff to lose money or property." *Hall v. Time Inc.*, 158 Cal. App. 4th at 849. Plaintiff relied on Capital One's representation in the "Schumer Box" in the solicitation it sent to her, advertising a "fixed" APR, in reaching her decision to accept Capital One's offer for a credit card. (See SAC at ¶ 14.) When Capital One forced Plaintiff to accept an interest rate increase or close her credit card account, she was facing harm *either way* as a result of the position Capital One had forced her into, so the injury she suffered was not a result of her own decision, but was inevitable and solely the result of Capital One's own actions.  (See id. at ¶¶ 20-26.) In other words, Plaintiff *had no choice* (in response to Capital One's misleading business practice) but to be harmed as a result of Capital One's business practice, and her injury was caused by Capital One alone.  Plaintiff's decision was not "voluntary" at all, as Defendant alleges.  (Motion to Dismiss, p. 13, line 10.) Contrary to Defendant's assertions, Plaintiff indeed has standing to bring a UCL claim as she has undoubtedly lost money or property "as a result of" Capital One's unfair business practice.  *See* Cal. Bus. & Prof. Code 17204.  Furthermore, Plaintiff has brought a meritorious claim in this instance.

## 2.    THERE IS NO "SAFE HARBOR" FOR CAPITAL ONE'S ACTIONS

In her Motion to Dismiss, Capital One somehow argues that it is protected by the "safe harbor" of the UCL.  (Motion to Dismiss at p.13, line 13 to p. 14, line 19.) To support this assertion, Capital One cites to case law which states that "when specific legislation provides a "safe harbor," plaintiffs may not use the general

unfair competition law to assault that harbor." [Motion to Dismiss at p. 13, lines 18-20, citing *Cel-Tech Commun's., Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 182 (1999) .[6]]  The problem with this assertion, however, is that in this instance there is no other law at all that provides a "safe harbor" for Capital One's actions.  As a result, Defendant's "safe harbor" claims are a non-issue for this motion.  Capital One's argument is solely based on its erroneous assertion that its actions here were not in violation of TILA and Regulation Z.  As Plaintiff has established above, Capital One's business practice of including the term "fixed" to describe the APR in the "Schumer Box" in its solicitations for credit cards to potential consumers was a violation of TILA's disclosure requirements, which mandate "clear and conspicuous" disclosures that are "reasonably understandable" to a potential consumer of credit card services.  *See* 15 U.S.C. 1601, *et seq.*; 12 C.F.R. 226.5 *et seq.*  Because Defendant's actions were contrary to these federal mandates, unlawful, and in violation of TILA, there is no "safe harbor" from UCL claims, as Defendant so claims, and its argument on this issue fails entirely.

### 3.    PLAINTIFF HAS ALLEGED UNLAWFUL CONDUCT IN ITS TILA CLAIM

"Whether a business act or practice constitutes unfair competition within *BP&C § 17200* is a question of fact."  *Watson Labs., Inc.*, 178 F. Supp. 2d at 1117.  Because this issue is a question of fact, it is improper for the Court to decide it at this stage in the proceedings.  However, as Plaintiff has established above, Capital One's business practice of including the term "fixed" to describe the APR in the

---

[6] The court in the *Cel-Tech Commun's.* case further articulates the "safe harbor" standard relied on by Capital One (although this portion of the Court's decision is curiously left out of Capital One's discussion), stating that ***to "forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct."*** *Id.* at 183.  (Emphasis added.)  Nowhere has Capital One pointed to any provision that actually <u>bars</u> plaintiff's claim, and TILA and Regulation Z clearly do not permit Capital One's business practices here but instead actually <u>prohibit</u> them.  *See* 15 U.S.C. 1601, *et seq.*; 12 C.F.R. 226.5a; *Roberts* 342 F.3d at 262.  Capital One's "safe harbor" argument completely fails.

LAW OFFICES
KIRTLAND & PACKARD LLP

"Schumer Box" in its solicitations for credit cards to potential consumers was a violation of TILA's disclosure requirements, which mandate "clear and conspicuous" disclosures that are "reasonably understandable" to a potential consumer of credit card services. *See* 15 U.S.C. 1601, *et seq.*; 12 C.F.R. 226.5a. The UCL's "scope is broad ... Its coverage is 'sweeping, embracing' 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Cel-Tech Communs., Inc.*, 20 Cal.4th at 179, *quoting Rubin v. Green*, 4 Cal. 4th 1187, 1200 (Cal.Ct.App. 1993). "As our Supreme Court put it, section 17200 'borrows' violations of other laws and treats them as unlawful actions independently actionable under section 17200 et seq." *Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 618 (Cal.Ct.App. 1996), *quoting Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (Cal.Ct.App. 1992). Plaintiff has established unlawful conduct based on Capital One's violations of TILA and Regulation Z.

Furthermore, as discussed above, contrary to Defendant's repeated arguments throughout its Motion to Dismiss, the contractual authorization is completely irrelevant to Plaintiff's alleged TILA claim and violation, and is also irrelevant to the defense of Plaintiff's UCL claims for the same reasons. Whether Capital One had reserved the right to change the interest rate does not correct its violations of TILA, which were based on the misleading practice of failing to clearly and conspicuously disclose, in a reasonably understandable form, the APR on the credit card it was advertising in the solicitation it sent to Plaintiff. *See* 15 U.S.C. 1601, *et seq.*; 12 C.F.R. 226.5a; *see also Roberts* 342 F.3d at 262. Capital One's violations of TILA and Regulation Z were unlawful and support Plaintiff's claim under the "unlawful" prong of the UCL.

### 4.   PLAINTIFF HAS ALLEGED FRAUDULENT AND UNFAIR CONDUCT

As Plaintiff has established above, Capital One's business practice of including the term "fixed" to describe the APR in the "Schumer Box" in its

LAW OFFICES
KIRTLAND & PACKARD LLP

solicitations for credit cards to potential consumers was a violation of TILA's disclosure requirements, which mandate "clear and conspicuous" disclosures that are "reasonably understandable" to a potentional consumer of credit card services. See 15 U.S.C. 1601, *et seq.*; 12 C.F.R. 226.5 *et seq.*; *see also Roberts* 342 F.3d at 262. Plaintiff has established fraudulent and unfair conduct based on the same actions engaged in by Capital One that constituted violations of TILA and Regulation Z.

"Whether a business act or practice constitutes unfair competition within *BP&C § 17200* is a question of fact." *Watson Labs., Inc.* 178 F. Supp. 2d at 1117. Because this issue is a question of fact, it is improper for the Court to decide it at this stage in the proceedings. However, Capital One's misleading business practice in this instance, of advertising a "fixed" APR in the "Schumer Box" in the solicitation it sent to Plaintiff, is clearly actionable under the "unfair" and "fraudulent" prongs of BP&C 17200. As stated by the Court of Appeal of California:

> 'Unfair,' as used in the statute, simply means any business practice
> whose harm to the victim outweighs its benefits. 'Fraudulent,' as used
> in the statute, does not refer to the common law tort of fraud but only
> requires a showing that members of the public are likely to be deceived.

*Olsen v. Breeze, Inc.*, 48 Cal. App. 4th at 618. Capital One's behavior with respect to the solicitations it sent to Plaintiff and the class advertising a "fixed" APR on the credit card it was offering them was both "unfair" and "fraudulent" under the standard described above.

In further elaborating on the analysis of the "unfair" standard in BP&C 17200, the Court of Appeal of California stated that the "court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. In general, the 'unfairness' prong has been used to enjoin deceptive or sharp practices."

*Klein v. Earth Elements, Inc.* 59 Cal.App.4th 965, 969-970 (Cal.Ct.App. 1997). There is no benefit to Capital One's business practice of misleading consumers into credit cards by falsely advertising in solicitations that the credit cards have a "fixed" APR. Here, Plaintiff and the class has been harmed in that they have been forced to accept a higher interest rate than was explicitly advertised to them as the "fixed" rate on their credit cards. In contrast, there is simply no benefit to anti-competitive behavior such as Capital One's misleading advertising in the solicitations for its credit cards (except to Capital One itself). *See FTC*, 291 U.S. at 79-80.

Furthermore, Capital One's business practice is undoubtedly likely to deceive the public (indeed it *did* deceive Plaintiff and the class) into believing that they are receiving a credit card with a "fixed" interest rate, when in fact they are not. "The test for 'fraud' as contemplated by *BP&C § 17200*, of the Unfair Competition Act ... is whether the public is likely to be deceived." *Klein,* 59 Cal.App.4th at 970. There is no question that the public is likely to be deceived by explicitly false advertising such as is at issue in this case. Plaintiff has stated a UCL claim under all prongs of BP&C.

## 5. PLAINTIFF'S REMEDIES ARE NOT PREEMPTED BY FEDERAL LAW

Defendant has filed a Motion to Strike with the Motion to Dismiss, and contends in it that Plaintiff cannot obtain an injunction against Capital One because it is a national banking association, and also that Plaintiff cannot obtain restitution against it for the same reason. (See Motion to Dismiss at p. 18, lines 7-11.) However, this is an inappropriate manner for Defendant to seek the relief it requests, as neither of these prayers for relief should be stricken from the SAC as a result of Defendant's contentions.

Defendant here is merely stating what could *ultimately* prove to be an affirmative defense to Plaintiff's requests for relief, by stating that as a National Bank Capital One cannot be penalized with an injunction or be required to pay

restitution fees after the time it converted to a National Bank.  At this stage in the proceedings, whether Capital One is in fact *entitled* to an affirmative defense on these issues is a question of fact.  If there is such a bar to these types of relief as Capital One so contends, then Capital One must establish that, and numerous questions of fact exist, including whether Capital One's change of its structure to a National Bank was undertaken to avoid the exact types of relief that Plaintiff seeks here.  Also at issue is whether such a change in status *after* the allegations in a complaint took place would preclude the protections against this type of relief that Capital One contends it is now entitled to.  As a result of all these issues, at this juncture, these and other related aspects of Capital One's Motion to Strike are unclear, and the manner in which Capital One changed its structure is not properly defined to entitle Capital One the relief it seeks in having the injunctive and restitutionary relief sought stricken from the SAC.  It is clearly premature to make a ruling and strike this relief from the SAC, and the Motion for Summary Judgment stage would likely make a more appropriate forum for Defendant to have these issues decided.[7]

## VI.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint and To Strike Certain Remedies Sought should be denied. Alternatively, the Court should allow Plaintiff leave to amend to cure any potential deficiencies in Plaintiff's Complaint.

//

//

//

---

[7] Further, Plaintiff amended her Complaint to reflect Capital One Bank, N.A. as the proper defendant in the lawsuit versus the originally sued entity, Capital One Financial Corp., based solely on defense counsel's representations that Plaintiff had named the wrong entity.  However, once discovery commences, it may show that, indeed, there are other entities which are appropriate defendants as well, and which may not be subject to any potential affirmative defenses.

LAW OFFICES
KIRTLAND & PACKARD LLP

1  DATED:  June 9, 2008                    Respectfully submitted,

2

3                                          KIRTLAND & PACKARD LLP

4                                   By:    /s/ Behram V. Parekh
                                           BEHRAM V. PAREKH, of counsel
5
                                           *Counsel for Plaintiff Raquel Rubio,*
6                                          *and all others similarly situated*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
KIRTLAND & PACKARD LLP

# EXHIBIT A

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SAC AND TO STRIKE CERTAIN REMEDIES SOUGHT

G–10(A)—Applications and Solicitations Model Form (Credit Cards)

| | |
|---|---|
| **Annual percentage rate (APR) for purchases** | _____% until (expiration date), after that, _____ % |
| **Other APRs** | Balance transfer APR: _____% <br> Cash advance APR: _____% <br> Penalty APR: _____% See explanation below* |
| **Variable-rate information** | Your APR may vary. <br> The rate for [purchases] [cash advances][balance transfers] is determined by (explanation).  See explanation below** |
| **Grace period for repayment of balances for purchases** | [ __ days] [until _____ ] [not less than __ days] [between __ and __days] [ __ days on average] <br><br> [You have no grace period in which to repay your balance for purchases before a finance charge will be imposed.] |
| **Method of computing the balance for purchases** | |
| **Annual fees** | [Annual] [Membership] fee:   $ _____ per year] <br><br> [(type of fee):                    $ _____ per year] <br> [(type of fee):                    $ _____ ] |
| **Minimum finance charge** | $ _____ |
| **Transaction fee for purchases** | [$ _____ ] [ _____ % of _____ ] |
| **Transaction fee for cash advances:** [$ ____ ] [ __ % of ___ ] <br> **Balance transfer fee:** [ $____ ] [ ___% of ____ ] <br> **Late-payment fee:**  [$ ____ ] [ ___ % of ____ ] <br> **Over-the-credit-limit fee:**  $ ___ | |

\*  Explanation of penalty.
\*\*Explanation of variable rate.

G–10(B)—Applications and Solicitations Sample (Credit Cards)

| | |
|---|---|
| **Annual percentage rate (APR) for purchases** | 2.9% until 11/1/00, after that, **14.9%** |
| **Other APRs** | Cash advance APR: 15.9% <br> Balance transfer APR: 15.9% <br> Penalty rate: 23.9%. See explanation below.* |
| **Variable-rate information** | Your APR for purchase transactions may vary. The rate is determined monthly by adding 5.9% to the Prime Rate** |
| **Grace period for repayment of balances for purchases** | 25 days on average |
| **Method of computing the balance for purchases** | Average daily balance (excluding new purchases) |
| **Annual fees** | None |
| **Minimum finance charge** | $ .50 |
| **Transaction fee for cash advances:** 3% of the amount advanced <br> **Balance transfer fee:** 3% of the amount transferred <br> **Late-payment fee:** $ 25 <br> **Over-the-credit-limit fee:** $ 25 | |

\* Explanation of penalty.
\*\* The Prime Rate used to determine your APR is the rate published in _____ on the ___ day of the prior month.